THE AUGUSTA RAILWAY COMPANY *v.* GLOVER.

1. The declaration sets forth a cause of action.
2. Where there is no special demurrer to a declaration, it is not error to refuse to strike from the latter certain words as not relevant either in matter of form or substance, the motion to strike being made orally at the trial.
3. The right of action given by the act of October 27th, 1887, to a mother for the homicide of her son, upon whom she is dependent in whole or in part for support, is not confined to residents of this State, but belongs alike to all mothers under like circumstances, wheresoever they may reside.
4. It is no bar to a suit by the mother for the homicide of her minor son, that the father has a pending suit in which he claims damage for the loss of the son's services up to the time the latter would have arrived at his majority.
5. Evidence of the father's physical disability to labor is admissible

in behalf of the mother, as tending to show her partial dependence on the minor son whose homicide is complained of,

6. Where father and mother and minor children all reside together and are mutually dependent upon the labor of the family for support, a minor child over fifteen years of age, whose labor or the proceeds of it comes into the common stock, is to be considered as contributing substantially to the support of the mother.

7. The fact that the passenger killed had never before ridden upon an electric car, was admissible in evidence for the purpose, at least, of illustrating the cause of his failure to alight from the car in safety.

8. An electric railway company which has provided its cars with gates to prevent passengers from alighting on the side next to a parallel track, cannot defend itself against the charge of negligence in not keeping one of the gates closed, by the evidence of its president "as to observations he had made in reference to electric street-car lines, cable-car lines, and other street-car lines operating on double tracks, that he had made recently in various cities of the United States in reference to the use of gates on the cars, and to show that gates are not used."

9. Although there may be no negligence whatever in the failure of an electric street railway company to have gates to the platforms of its cars, for the purpose of guarding against accidents to passengers by preventing them from leaving the cars on the side next to a parallel track of the same company, in the street, yet when a particular company has such gates to the platforms of its cars, not to keep them closed may or may not be negligence in the given instance, and this is a question of fact for the jury.

10. Although it is the duty of a street-car company to select a reasonably safe place for landing passengers wherever it may stop a car for that purpose, yet if the place be safe for a passenger to get off whilst the car is at rest, the company is not responsible for any peril which the passenger incurs, without its fault, from attempting to alight after the stoppage has terminated and the car has been put in motion, provided a reasonable time for alighting was allowed whilst the car was at rest, and the conductor did not know that the particular passenger intended to get off at that place and did not see him attempting to get off in time to warn or prevent him from so doing whilst the car was in motion.

11. When a car stops because of an obstruction on the track, and not to afford any passenger an opportunity for getting off, the company is not responsible for the safety of the place as one for getting off, whether the car, at the time the passenger undertakes to do so, be in motion or at rest, the conductor not seeing the passenger or being aware of his purpose at the time the attempt to get off is made.

12. Improper statements made by counsel in argument, which the

presiding judge did not hear and to which his attention was not called, either then or afterwards during the progress of the trial, not even by any request to charge the jury, will not require or justify the grant of a new trial.

13. The charge of the court touching the measure of recovery was subject to misconstruction, and was not quite full enough as to the right of the jury to avail themselves of facts in the evidence irrespective of the mortality tables.

14. In view of the facts of the case and the general charge of the court to the jury, there was no error in denying any of the requests to charge made by the defendant below.

15. It was not error to allow the plaintiff to write off part of the damages found by the jury.

June 5, 1893.

Action for damages.     Before Judge EVE.     City court of Richmond county.     September 5, 1892.

On January 13, 1891, Mrs. Glover sued the railway company for the killing of her son John C. Glover, who was alleged to have been fifteen years and five months old.   The declaration alleged, that he was single, and had no child or children; that she was dependent on him, and he contributed to her support; that he boarded one of defendant's street-cars propelled by electricity in Augusta, for the purpose of going to the Georgia railroad depot, took his seat and paid his fare; that when the car reached a certain point about opposite the union depot, it came to a stop and he got off the car from the rear platform, near to the parallel street railroad track of defendant, at which moment another of defendant's cars, running on the parallel track in an opposite direction to that of the car from which he had just dismounted, ran over him killing him; that he was not familiar with the method in which the cars were run and operated; that he resided in the country and had never before ridden on said electric cars; that the approach of the car which ran over him was wholly unexpected and unseen by him until too late to get out of the way; that it was the duty of defendant's agents in

charge of the car on which he had ridden to the depot, to have had closed the platform gate next to the parallel track on the rear end of the car, and to have cautioned and seen that he did not leave the car from that side, which duties they negligently and carelessly failed to perform; that it was also the duty of defendant's agents in charge of the car which ran over him, to have slowed up as it approached the point where it was to pass the other car, which duty was wholly disregarded, the car being actually run at the time at the rate of twelve miles per hour, a rate not only positively prohibited by the city ordinances, but which, in the absence of such prohibition, would at that locality have been an act of gross carelessness; that the motorman in charge of the car that ran over her son, at the moment or just before, was negligently engaged in a conversation with the conductor, instead of being on the lookout ahead of his car, as was his duty.

1. The defendant demurred to the declaration, on the grounds, that it set forth no legal cause of action, and for failure to allege certain things as to which see the first division of the opinion. The demurrer was overruled.

2, 3. On the overruling of defendant's motion to strike from the declaration certain words as irrelevant and illegal, and on the striking of a special plea as to plaintiff's non-residence, the opinion fully states the facts.

4. Cotemporaneously with the filing of the mother's suit, a suit was filed by the father for the loss of the son's services up to majority, alleging the same acts of negligence as set forth in the mother's declaration. Defendant filed a plea in abatement, alleging that the two suits were for the same cause of action and were inconsistent, and praying that an election be required as to which of the two would be proceeded with. The father's suit was thereupon dismissed by his counsel, but was

renewed after verdict for the plaintiff in the present case and pending defendant's motion for a new trial; and defendant filed an amendment to said motion, setting forth these facts, and alleging that they were proper to be considered in passing on the motion, because the father could not be entitled to the services of the son and the proceeds of his labor, and the mother at the same time dependent thereon for her support and the son contributing to her support within the meaning of the law.

5. Among the grounds of the motion for a new trial, error is assigned on the admission, over defendant's objection, of testimony that plaintiff's husband was over fifty years old and incapacitated to labor at times, and had been completely so for weeks at a time, and when he was not laid up he was not able to do as much work as other men, all on account of an old wound which now and then broke out on him. The objection was, that the testimony was irrelevant and illegal, and tended to prejudice the jury.

6. Testimony that plaintiff "received benefits from the services of this boy," and that she was "a dependent person," was received over objections. Defendant requested the court to charge as follows, and the refusal to do so is assigned as error: "If you find from the evidence that deceased was about $15\frac{1}{2}$ years old; that he lived at home with his father and mother; that he had an older brother and some sisters who also lived at home and worked on the farm, and they all helped their father in this work; that deceased worked on the farm with his father and sisters and older brother, as one of the family, without wages, when he could, and helped his father at other work when he could; and that the proceeds of his labor, both on the farm and elsewhere when he worked, went into the common lot or was used by the father and mother, and thus contributed to the help and

support of all the entire family, then I charge you that the mother under the law was not substantially dependent on him for a support, and you should find a verdict for the defendant. Where a mother is substantially dependent on a child for support and that child materially contributes to her support, the child stands in the place of and represents the father or husband, so far as he substantially contributes in whole or in part to her support. If you find in this case that the father lived with his wife and family; that he was the head of such family and did all he could to support the same; and that deceased only aided and helped as a son would naturally do, and the result of his labor went for the benefit of himself and his father and mother and other members of the family, then I charge you that under the law the plaintiff was not substantially dependent on him, and you should find for the defendant."

7, 8. Assignments of error in admitting evidence, as to which see the opinion.

9. Error is assigned on the refusal of the court to give the following in charge, as requested: "If you find that it was not customary, at the date of the accident, for the gates of the cars on the side next to the parallel track to be closed except on Broad street, and that they were closed on that street on account of the posts between the tracks, then you may consider this reason in passing on the alleged negligence of defendant, and if you are satisfied that it was not negligence to open them while off of Broad street, you may relieve the defendant of any negligence charged on this account. If you believe from the evidence that the defendant was negligent in leaving open the gates of the car on the side next to the parallel track, and yet that deceased saw it was open, or by the exercise of ordinary care could have seen it, and after he saw that the gate was open he stepped off of the car while in motion and on the side

of the parallel track, then you may consider this fact in determining as to whether deceased could have avoided the injury by the exercise of ordinary care; and if you believe he could, then plaintiff cannot recover, and you should find for defendant."

10–11. Errors in the charge, as to which see the opinion.

12. Error in not stopping Judge Twiggs, who concluded argument for the plaintiff, and who, after stating that the jury knew it was not dangerous or negligent to get off the street-cars while in motion, said: " Why, gentlemen of the jury, I do it myself every day. I live on the Hill, and when the cars get opposite my gate I just step off of the car. The cars do not stop, and I don't ask them to stop, and I step off when they are going pretty fast at that; and there is no more danger about it than there is in stepping on this floor." The court did not hear these remarks.

13. Error in the charge quoted in the thirteenth division of the opinion.

14. Other grounds of the motion are, that the court erred in not charging the following as requested: (*a*) "I charge you that if deceased could have seen the car approaching him and avoided it by the exercise of ordinary care, then the plaintiff cannot recover." (*b*) " I charge you that if you find from the evidence that deceased got on the car to go to the union depot; that the car stopped at the usual place of stopping to let passengers off at said depot; that it moved on and that deceased left said car at a point beyond the stopping place, and on the side next to the parallel tracks and while the car was in motion, then you may consider these facts in passing on the question as to whether deceased could have avoided the accident by the use of ordinary care, and if you find he could, then plaintiff cannot recover." (*c*) "If you believe from the evidence that deceased

stepped from a moving car, and that there was space enough between the tracks for a person to stand, and that from the manner in which he got off of the car he was thrown upon the other track, and that the motorman and other agents of defendant exercised all ordinary and reasonable care and diligence to prevent the injury, then plaintiff cannot recover." (d) " If you believe from the evidence that deceased stepped off of the car while it was in motion, and that another car, coming in the opposite direction, was within a few feet of him, and that the motorman of that car did not see him, or could not in the exercise of extraordinary diligence see him until he stepped off, and if you further believe that just as soon as he did see him he did all that was possible to prevent the car running over him, then I charge you that you may consider these facts in reaching a conclusion as to whether the defendant exercised all ordinary and reasonable care and diligence after his danger became apparent, and if you find it did, then plaintiff cannot recover." (e) "If you find from the evidence that the time between the deceased stepping from the car and the injury was but a few seconds, you may consider this fact in determining if defendant used all ordinary and reasonable care. and diligence in the time allowed and under the circumstances of the accident, and if you find it did, then plaintiff cannot recover, and you should find for defendant." (f) " If you find from the evidence that the deceased saw the parallel tracks of defendant's road, or could have seen them by the exercise of ordinary care, then I charge you that you may consider this fact in arriving at a conclusion as to whether deceased exercised ordinary care in getting off of the car of defendant on the side next to the parallel tracks of the road, and if you find he did not, and as a result of getting off on that side was killed, and defendant exercised all ordinary and reasonable care and

diligence after his danger became known, then plaintiff cannot recover, and you should find for defendant." (*g*) "A railroad company is not an insurer against accidents, and if you believe that the death of Mr. Glover resulted from an accident, in his losing his balance in stepping off of the car and so near to the passing car that he was run over by it, and that the man on the passing car exercised all ordinary and reasonable care and diligence, after he saw him step off, to prevent running over or striking him, then I charge you that plaintiff cannot recover." (*h*) "If you believe that deceased got off of the car while it was in motion, then I charge you that you may consider that fact as to whether he should not have looked out for himself for danger, and if you believe from the evidence that if he had looked he could have seen the car which ran over him approaching, but stepped off when the car was too near him to be stopped by the exercise of all ordinary and reasonable care and diligence upon the part of those operating it, then plaintiff cannot recover, and your verdict must be for the defendant." (*i*) "If you believe from the evidence that Mr. Glover voluntarily stepped from the car while in motion and got upon the ground, then the relation of passenger and carrier ceased, and Mr. Glover was from that time entitled only to the same care and diligence from the railroad that any other citizen upon the street had. That care was the exercise of all ordinary and reasonable care upon the part of the company, and not extraordinary care. Extraordinary care is only required as long as the relation of carrier and passenger exists." (*j*) "If you find from the evidence that the car in which Mr. Glover rode had posted in the car, where they could be seen, notices to passengers not to get off while the cars were in motion, or next to the parallel tracks, then you may consider this fact in passing upon the question as to whether de-

ceased had notice of the way and side on which and the time at which he should have gotten off the car. The presumption is that these notices are seen and read."

15. The jury found for the plaintiff $7,733.98. The motion for new trial alleged that such amount was grossly excessive, etc. After argument but before any decision on the motion, plaintiff's counsel, without notice to opposing counsel, voluntarily wrote off $905.02 from the verdict. Error is assigned, because the court allowed this sum to be thus written off, it being alleged, that if the court was of opinion that the verdict was excessive, the same should have been set aside and a new trial granted; that such practice is unfair and illegal, tending to the injury of defendant; and that the amount left after the writing off is still grossly excessive and unwarranted by the evidence.

J. S. & W. T. DAVIDSON, for plaintiff in error.

TWIGGS & VERDERY, J. C. C. BLACK and J. T. PENDLETON, contra.

BLECKLEY, Chief Justice.

1. The material contents of the declaration are stated in the official report. A legal cause of action under the act of 1887 was set forth. It was not necessary to allege that the deceased could not have seen the car approaching him in time to avoid coming in collision with it, or that he made any effort to avoid coming in collision with it. It was not necessary to allege that the point at which he left the car was the regular stopping place, or that the stopping of the car was for the purpose of taking on or letting off passengers. It was not necessary to allege that he gave any notice of his desire or intention to leave the car or that defendant's servants had notice of such intention. It was not necessary to allege that the company had notice of his want of familiarity with the running and operation of electric

cars, or anything as to his size or appearance. The plaintiff's right of action did not depend upon widowhood or living apart from her husband, and as she alleged dependence on this son, although he was only between fifteen and sixteen years of age, it was not necessary to allege in what way she was dependent on him or that he had ever worked or earned money. The declaration imputes the homicide to the negligence of the company and points out specifically in what respects the company was negligent. The plaintiff's right to sue and to recover for the negligent homicide of her son is sufficiently apparent on the face of the declaration. There was no error in overruling the demurrer.

2. The motion to strike from the declaration the words, " that the said John C. Glover was not familiar with the manner in which said cars of the defendant were run and operated; that he resided in the country and had never before ridden on said electric cars," was properly denied, the motion to strike being made orally at the trial. If these words were objectionable as having no appropriate place in the declaration, the right mode of expelling them was by special demurrer filed at the appearance term. It would be altogether impracticable for the court, when the trial is on hand, to entertain motions to purge the pleadings of superfluous and irrelevant matter whether of form or of substance. The pleadings so far as possible should be settled before the trial term arrives, and this is the scheme of our law, except in so far as voluntary amendments are concerned. These, as matter of right, may be made at any stage of the case.

3. The special plea to the effect that the plaintiff and her son were both residents of South Carolina and that she has resided there ever since, presented no defence to the action. The statutory right is given by the act of 1887 to all mothers, no matter where they reside, and

without reference to the residence of the child whose homicide is the subject-matter of the action. Whenever a Georgia mother can recover, any other mother can do so under like circumstances. The act is general in its terms and has no hint of any discrimination in favor of residents or against non-residents.

4. Neither as a plea in abatement nor as one in bar is the pendency of a suit by the father of a minor son, for the damage occasioned to him by the loss of the son's services or in any other respect, any defence to an action by the mother founded on the act of 1887. By the terms of that act the mother is entitled to recover the whole value of the life. A claim by the father and a suit to enforce that claim, whether it be well founded or not, cannot defeat or abridge the statutory right of the mother to bring her action and maintain it. If there is an exclusive right in either parent to complain of the homicide, it is certainly not in the father. But the truth is there is no exclusive right, for the same tortious injury resulting in the death of a minor child may be a damage to both, to the mother in the arbitrary measure of damages prescribed by the statute, and to the father to the extent of his own loss, irrespective of the statute, whatever that loss may be. The act of 1887 does not purport to withdraw from the father any right of action which he had before by the common law. What it does is to confer upon the mother a right which neither of the parents had at common law. The statutory right of the mother is to recover for the child's death; the common law right of the father is to recover for the loss of services which the child would have rendered him had the child not been disabled by the tort complained of. *Augusta Factory* v. *Davis*, 87 *Ga.* 648.

5. There was no error in admitting evidence of the father's physical disability and consequent impairment of ability to labor. He was a laboring man and with-

out fortune. This being so, anything which reduced his capacity to perform labor whereby to procure the means of support for the plaintiff, his wife, would render her less independent of any aid from her children, including the deceased son. The evidence therefore would tend to show her partial dependence on that son for support present and future. The disability referred to had its origin long before the homicide of the son, and was in some degree operative at the time of the homicide and has been so ever since.

6. The father, mother and minor children all resided together and were mutually dependent upon the labor of the family for support. The deceased child, although not sixteen years of age, performed some labor, and it or its proceeds went into the common stock. Evidence to prove all this, or which tended to prove it, was admissible, and if this condition of affairs was established, the deceased son might well be considered as contributing substantially to the support of his mother. Members of the same household who live by their common labor and its proceeds have a mutual dependence one upon another. Certainly so unless it be affirmatively shown that a particular member consumes as much, or more, of the common stock than he contributes to it. Even that would not be a conclusive test, for the services of a child to a mother or of a mother to a child may well be reckoned as contributing substantially to the support of the recipient far beyond any money value which the services may have, and the chief element of dependence may be in respect to personal services of this nature. Moreover, in the case of laboring people some regard must be had to the probability of future dependence of an older member of the family upon younger ones. A son between fifteen and sixteen years of age whose vocation it is to labor for the family may well be regarded as one of the stays and props, both

present and future, of his mother, she being also a laboring woman and liable to become disabled by age or infirmity before her son shall have passed the meridian of life.

7. Evidence that the son had no previous experience in traveling upon an electric car was admissible, not for the purpose of changing or affecting the measure of the company's diligence, but as a fact tending to illustrate the cause of his failure to alight in safety. The jury in looking at the facts and circumstances of the homicide would naturally desire to classify the particular passenger, not alone by his age but also by his experience or the want of it in handling himself as a passenger on electric cars. Familiarity with this mode of transportation would qualify him to see and appreciate danger which he would not be likely to observe if he was wholly without experience. With experience he might be chargeable with fault; without it with none. And hence in the one case his failure to come off safely might be attributable to his own negligence in part or in whole, whereas, in the other case, he might be treated as free from any negligence whatever. It may be that the evidence might have other bearings, but it has this at least.

8. The negligence charged as to gates was in not having the gate of this particular car closed on the side next to the parallel track. We think what the president of the company would have testified as to his observations on other double-track lines of street-cars in various cities, was not relevant, and was consequently properly rejected. Two reasons against the admissibility of this evidence occur to us : the first is, that the practice of other lines would not serve for comparison on the question of diligence, unless it was shown that these lines were properly equipped and managed or were so recognized and reputed to be by experts in the business ; the other is, that it was not stated whether the other lines

had gates to their cars or not, but only that gates were not used. There is no recital in the record of what was proposed to be proved by the president except what is quoted, in the 8th head-note, from the motion for a new trial. If the lines examined by the president were without gates to their cars, their practice in not using gates would throw no light on the diligence of a company which, like the defendant, has provided gates but omits to use them.

9. There may be no negligence whatever in failing to have gates, for the very highest order of equipment may be dispensed with, provided the equipment is sufficient to come up to the standard of extraordinary diligence. This standard may be reached short of the very best or the superlative of the attainable. But when a company has provided gates, due diligence might require it to use them, and failure to use them might be negligence in the given instance. Whether it would be or not is a question of fact for the jury. There was no error in so treating it. And this is so irrespective of the particular object which the company had in view in procuring the gates, or of its own practice in their use. A hackman might put brakes on his hack for use in descending mountains only, and might restrict the use by his own practice to the making of such descents, but having them upon his vehicle it might be negligence not to use them on proper occasions in descending ordinary hills as well as mountains. Extraordinary diligence may require the carrier to use what he has though it would not require him to have as much as he has provided.

10. The charge of the court that " carriers of passengers are required to provide at points of destination places where passengers can leave their cars safely," was somewhat misleading as applied to a street railway. Companies engaged in carrying passengers on cars along a public street are not understood as engaging to make

safe landing places, but to select them. The duty is to select such place with reference to getting off whilst the car is at rest. The company is not responsible for peril which the passenger incurs without its fault in attempting to alight after the stoppage has terminated and the car has again been put in motion, provided a reasonable time for alighting was allowed while it was at rest. This is true more especially if the conductor did not know that the particular passenger intended to get off at that place and did not see him attempting to get off in time to warn or prevent him from so doing whilst the car was in motion. The charge that "a carrier of passengers is legally bound not only to safely transport, but to furnish the means of safe egress from the trains and passage therefrom," was not applicable to the facts. There was no question about furnishing the means of safe egress, but the complaint was that the passenger was permitted to use unsafe means, and in so doing was carelessly injured by another car.

11. Of course no duty touching the selection of a safe place for landing passengers is operative on any stop made on account of an obstruction upon the track. When a stop is made for that reason and there is broad daylight by which passengers can see for themselves, if one of them undertakes to get off, whether the car be in motion or at rest, the conductor not seeing him or being aware of his purpose, he cannot complain that a safe place was not selected for him to alight. This, however, would not justify the company in negligently running over him if, by accident, he failed to gain a firm footing on alighting but fell on a parallel track, exposing himself to danger on that track.

12. The presiding judge did not hear the improper statements made by counsel in argument, and his attention was not called to them at the time or afterwards during the progress of the trial, and no request was made.

to charge the jury touching the same. To say that a new trial is not required nor would be justified on this ground of the motion, is but to repeat in substance what has been ruled many, many times.

13. In charging the jury touching the measure of recovery the court said: "In determining the value of the life of deceased you consider his age, his expectancy of life, the amount he was earning when killed, his capacity to earn money in the vocations of life in which he was engaged. It is the cash value of the life that is to be given, not the gross amount he would have received during the term of years the tables say he could reasonably have expected to live. It is the gross amount reduced to present cash value." This charge was subject to misconstruction. Neither here nor elsewhere was the charge quite full enough as to the right of the jury to avail themselves of facts in the evidence irrespective of the mortality tables.

14. What may be contained in the motion for a new trial which we pass over in silence we deem free from substantial error. This includes the many requests to charge the jury which were denied, and some other topics besides. If the plaintiff's son had, before he was injured, succeeded in getting a footing upon the street which he could have maintained, his relation as passenger would then have ceased. But we understand the evidence as warranting the conclusion that he failed to effect a landing upon the street and fell upon the parallel track as the result of his attempt to land and not as a sequence to a landing already accomplished. In Creamer v. Railroad Co., 156 Mass. 320, 52 Am. & Eng. R. Cases, 558, the passenger had safely landed, and when stricken by the car was walking on the street.

15. We can see no objection to allowing a plaintiff to write off from her recovery voluntarily any sum whatever. If by so doing any excess of damages found by

the verdict is voluntarily relinquished, it would seem that the amount of the verdict would no longer be a cause for a new trial. Why should there be a new trial solely for the purpose of reducing the damages, when the plaintiff had voluntarily relinquished all that could be treated as excess? Other grounds for a new trial would, of course, stand unaffected.

*Judgment reversed.*