**SOUTHERN SURETY CO. v. HIBBS et al.**
**(No. 6373.)**

(Court of Civil Appeals of Texas. San Antonio. March 24, 1920. Rehearing Denied April 28, 1920.)

**1. Master and servant ⬅⮕405(5)—Facts held to justify finding that parents of minor son temporarily employed were "dependents" within Compensation Act.**

Proof that deceased employé, a 19 year old farmer boy who was his parents' chief help on their rented farm where he worked, sought temporary employment to obtain money to buy clothing for himself with intent to return to the farm to assist his parents, who were poor and failing in health and strength, *held* to justify a finding that they were "dependent" upon him within Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dependent.]

**2. Master and servant ⬅⮕388 — Dependency within Compensation Act question of fact.**

The question of dependency within the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) is one of fact rather than of law, and each case must rest on its own facts.

**3. Master and servant ⬅⮕388—Test of dependency within Compensation Act stated.**

Under the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), the test of dependency is, not whether the family could support life without the services or contributions of the deceased, but whether they depended upon them as part of their income or means of living.

**4. Master and servant ⬅⮕417(5)—Failure to define dependents within Compensation Act held not error.**

In a suit to set aside an award under the Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) to parents as dependents, for the death of their son, refusal of the trial judge to define the word "dependents" was not erroneous; the statute itself failing to define it.

**5. Master and servant ⬅⮕405(6)—Finding of daily wage as basis of compensation held warranted.**

Evidence *held* to sustain a finding as to the amount of daily earnings of those of the same class as deceased employé doing the same work during the preceding year within Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), providing that where an injured employé shall not have worked for a year his average annual wages shall consist of 300 times the average daily wage which an employé of the same class working substantially the whole of such immediately preceding year in similar employment shall have earned during the days when so employed.

Appeal from District Court, Travis County; George Calhoun, Judge.

Proceedings by W. M. Hibbs and another under the Employers' Liability Act. to recover for the death of J. D. Hibbs, an employé of the Midland Bridge Company, opposed by the Southern Surety Company, insurer. An award by the Industrial Accident Board was affirmed on appeal to the district court, and insurer appeals. Affirmed.

Hart & Patterson, of Austin, for appellant.
Charles W. Webb, of Elgin, and Brooks, Hart & Woodward, of Austin, for appellees.

FLY, C. J. On February 21, 1918, J. D. Hibbs, a son of W. M. Hibbs and Carrie Hibbs, was killed while an employé of the Midland Bridge Company, which was a subscriber under the Employers' Liability Act of 1917, chapter 103, p. 269, General Laws of the Thirty-Fifth Legislature (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91). Appellees filed their claim with the Industrial Accident Board of Texas, as dependent parents of their deceased son, and on September 5, 1918, an order was issued by the Industrial Accident Board awarding appellees weekly compensation of $13.80 for a period of 360 weeks. Appellant, being dissatisfied with the award, gave the required notice and filed suit, being the insurer of the Midland Bridge Company in the district court of the Fifty-Third district of Travis county, to set aside the award. The cause was submitted on the following issues:

(1) "Were the defendants, W. M. Hibbs and Carrie Hibbs, as parents of J. D. Hibbs, deceased, taking into consideration their condition and circumstances in life, dependent wholly or in part upon the labor of the deceased, J. D. Hibbs, for support at the time of the accident which resulted in his death?"

(2) "What was the average daily wage which was earned by an employé of the same class as the deceased, J. D. Hibbs, working substantially the whole of the immediately preceding year, in the same or a neighboring place as that which the said J. D. Hibbs was working at the time of his death."

On the answers to those issues judgment was rendered awarding appellees the same amount as was awarded by the Industrial Accident Board.

The important question to be determined in this court is as to whether the jury was justified in finding that appellees were dependent in whole or in part upon the labor of their deceased son, J. D. Hibbs. The statute does not define "dependent" as used therein, but merely provides that the benefit of the insurance provided for therein shall be used for the benefit of dependents, among whom are "dependent parents." It is the contention of appellant that the evidence fails to bring appellees within the purview of the statute.

[1] It is agreed that the Midland Bridge Company was a subscriber to the Employers' Liability Act and carried a policy with appellant; that J. D. Hibbs, the son of appellees, was in the employment of the Midland Bridge Company on February 20, 1918, and was covered by the insurance policy of his employer; and that he was killed in the course of his employment on that date. Appellees owned no real estate, but were renters who had been working a parcel of land on "Jim Moore's place in Bastrop county" for 13 years. All the property of appellees consisted of a pair of mules, a pony, a cow and heifer, and a few farming implements. The deceased son was 19 years old when killed, and, there being a failure in crops in 1917, had gone to Houston to obtain temporary employment in order to buy himself much needed clothing. He had promised appellees, and fully expected, to return in time to assist his parents in making a crop in 1918. He had for a number of years been assisting his father in cultivating the rented place, and his mother in her labors about the house. It was in testimony that he did the work of a man on the farm. His mother and father had led a hard life and were failing in health and strength, and the dead boy not only was his father's chief help on the farm, but he carried water, milked the cow, cut wood, and fed the stock. He was the chief dependence of his parents.

It was not the intention of the Legislature to so limit the meaning of the word "dependent" that a parent must be a paralytic or otherwise totally incapacitated from obtaining the bare necessities of life in order to obtain the benefit of employers' liability insurance; nor did the Legislature intend that insurance companies could evade contracts by proof that a son was not at the very time of his death giving his wages to his parents, but had temporarily obtained employment in order to buy clothes for himself which the parents were too poor to supply and at the same time relieve them of the burden of furnishing food for him. He was to return in a short time to renew his labors on the farm. A temporary intermission in work, between seasons, would not in reason remove the dependency of the parents on his labor in caring for the farm. The facts of the Connecticut case of Blanton v. Wheeler & Howes Co., 91 Conn. 226, 99 Atl. 494, Ann. Cas. 1918B, 747, are not similar to those in this case. There was no intermission of six months in the dependency of the parents of the dead boy on his help and assistance, but he merely lifted the burden of buying his clothes and supplying his food from the already over-burdened shoulders of his parents, at a time when farm labor could not be performed. The deceased in this case was laboring to provide the necessities of life for his parents. The parents of a farmer boy could never be dependent on him if he was compelled to labor every day and hour of his life on the farm, and no definition given that would require such strictness and narrowness in the consideration of the word "dependent," as used in the Texas statute, will meet with favorable consideration by this court. We prefer the more humane and reasonable decisions which give a broader and more enlightened meaning to the word as used in statutes similar to the Texas statute. The Supreme Court of Georgia, in Railway v. Glover, 92 Ga. 132, 18 S. E. 406, held:

"Members of the same household, who live by their common labor and its proceeds, have a mutual dependence one upon another. Certainly so unless it is shown that a particular member consumes as much or more of the common stock than he contributes to it. Even that would not be a conclusive test, for the services of a child to a mother or a mother to a child may well be reckoned as contributing substantially to the support of the recipient far beyond any money value which the services may have, and the chief element of dependency may be in respect of personal service of this nature."

Again in the case of Fuller v. Inman, 10 Ga. App. 680, 74 S. E. 291, the same court said:

"It is utterly immaterial that the child does not earn sufficient money to support himself. If the mother gets the benefit of what he does earn, or of his labor, and she is dependent upon such labor or earnings for support, she has a right to recover for his negligent homicide. * * * If he performs substantial services of which she receives the benefit in and about the household, this is a contribution to her support, and she is a dependent upon the child within the meaning of the law, without reference to whether he contributes one penny to her support. The statute deals with fact, not theory. It is the fact of contribution and the fact of dependency which creates the right of action."

[2, 3] The question of dependency is one of fact rather than a question of law, and each case must rest on its own facts. The test of dependency is, not whether the family could support life without the services or contributions of the deceased, but whether they depended upon them as part of their income or means of living. Bradbury, Workman's Compensation, pp. 571 to 573. All the cases seem to hold that partial dependency is all that is required, and a mere temporary intermission in the performance of services or the making of contributions will not destroy dependency. If so, a week's vacation or sickness for a time would cancel the contract of insurance. It has been held that a person may have been a dependent on another even though he had only sent money at irregular intervals and in irregular amounts. Bradbury, Work. Compensation,

pp. 573, 574. The object of the statute is to help the relatives of a deceased person who may have been dependent on him, and its beneficent design should not be destroyed by technical construction and fine distinctions. The law would become almost a dead letter if insurance of the employé can be defeated by the subtle interpretation of the law advanced by appellants. The first assignment of error is overruled.

[4] The second assignment of error complains of the refusal of the trial judge to define the word "dependent" for the jury. The court asked the jury:

"Were the defendants, W. M. Hibbs and Carrie Hibbs, as parents of J. D. Hibbs, deceased, taking into consideration their condition and circumstances in life, dependent wholly or in part upon the labor of the deceased, J. D. Hibbs, for support at the time of the accident which resulted in his death?"

That question was clear and as open to the comprehension of an average jury as any number of definitions would have made it. The Legislature evidently did not deem it necessary to define a word so generally comprehended, for no definition of "dependent" is given in the statute. The definition of "dependent" asked by appellant was, if correct, coupled with matters not raised by the evidence such as benefits "which might be devoted to the establishment or increase of some fund which he might decide to lay aside, and does not cover donations or gifts." Such a charge would not have aided, but would probably have confused the jury. The second assignment of error is overruled.

As hereinbefore concluded by this court, the evidence was sufficient to show that appellees were dependent parents of J. D. Hibbs, deceased, and the third, fourth, and fifth assignments of error are overruled.

[5] It was established by the evidence that the deceased, J. D. Hibbs, had been in the employment of the Midland Bridge Company for about three months or less, and not for a year, and it is provided by the Workmen's Compensation Act, herein cited, that—

An "injured employé who shall not have worked for a year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employé of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed."

It is also provided, when it is impracticable to compute the average weekly wages, it shall be computed by the board in any manner that may seem just and fair to the parties. There was evidence tending to show that employés of the same class as young Hibbs had received for the entire preceding year $4 or more per day, and consequently appellees were entitled to recover 300 times the sum of $4. The evidence was sufficient to sustain the finding of the jury that $4 a day was earned by those of the same class as J. D. Hibbs, during the preceding year. The sixth assignment is overruled.

The judgment is affirmed.