## FEDERAL UNDERWRITERS EXCHANGE v. HALL et al.

### No. 13480.

Court of Civil Appeals of Texas. Dallas.

Feb. 18, 1944.

Rehearing Denied March 17, 1944.

520

Mohrle & Oster, of Dallas, and Lightfoot, Robertson & Gano, of Fort Worth, for appellant.

James M. Floyd and Allen Crowley, both of Fort Worth, and Henry W. Strasburger, of Dallas, for appellees.

LOONEY, Justice.

This case arose under the Workmen's Compensation Law. American Body & Equipment Company, Inc., was the employer and subscriber; John Thomas Anderson, a minor 18 years of age, deceased, was the employe; Federal Underwriters Exchange was the insurance carrier; and Christine A. Hall, sister of the deceased, and her husband Howard M. Hall, claiming to be dependents of deceased within the meaning of the statute, filed with the Industrial Accident Board their claim for compensation, based upon allegations to the effect that on July 14, 1942, deceased came to his death as the result of accidental injuries received in the course of employment while using an electrical drill. The Federal Underwriters Exchange, appellant herein, duly filed its appeal from the action of the Board; Hall and wife, appellees, answered and filed a cross-action, alleging the facts and claiming compensation, to which appellant replied in a supplemental petition. Based upon answers of the jury to special issues submitted, the court entered a lump sum judgment in favor of appellees and their attorneys against appellant, from which it prosecuted this appeal.

The jury found all issues of fact in favor of the appellees; that is, issues that established liability, dependency within the meaning of the definition given in the charge, and found facts justifying a lump sum payment. These findings, in our opinion, were authorized by evidence and are adopted as our conclusions of fact on the respective issues.

In its "Third Point," appellant contends that the judgment should be reversed and here rendered in its favor because the evidence was insufficient to show that the deceased employe came to his death by reason of an accident or injury compensable under the Workmen's Compensation Law.

This Point presents purely a question of fact, and although having just announced our conclusion to the contrary, will set out the relevant evidence bearing upon the issue. It seems that at the time of his accidental death, John Thomas Anderson was an employe of the American Body & Equipment Company, Inc., engaged in constructing refrigerator trailers, used in hauling fruits and vegetables. Deceased, a boy eighteen years of age, of average size, slightly taller than the average, weight about 135 to 145 pounds, was healthy, strong and athletic. On the day of the accident, July 14, 1942, he and a fellow employe, Pat Dillard, a boy about seventeen years of age were working inside one of these trailers completely enclosed with the exception of a door at the rear end; it was 8 ft. wide, 25 ft. long, about 6 ft. high at the rear end and about 4½ ft. high at the front, and without artificial ventilation. At the time of the accident, John Thomas was at work in the front or lower end of the trailer, standing in a stooping position, drilling holes in sheet metal with an electric drill weighing about 5½ pounds, connected with the electric wiring in the building, having a cord running through the handle, which

was shaped like a pistol grip with trigger to turn the current of electricity on and off. Pat Dillard, the only eyewitness, asked to explain the happenings, testified in substance that he was at work in the same trailer, about ten feet from deceased, heard him make an outcry for artificial respiration, saw him falling, holding and gripping the drill, which was jerked from his grasp and the electric current cut off when he fell to the floor. He did not speak again; his body seemed to be rigid, lay on the floor in the same bent or stooped position as when he was drilling, his arms and hands in same position as if he still held the drill. Witness thought he was dead when he fell to the floor; his body remained where it fell for some time before it was picked up and carried out, where the doctors applied artificial respiration and sought to revive him, but to no avail. Witness testified further that previously he had received two shocks while using same drill; the last time was on the forenoon of the day John Thomas was killed. These shocks were not severe enough to stop witness from work, but the last one was so severe that he cut off the current, but made no report of the occurrences. Witness testified further that it was exceedingly hot in the trailer at the time; that deceased perspired freely, but no one became ill from the heat. It appeared elsewhere in the evidence, that deceased's body was naked to the waist, and that he was in his bare feet.

Dr. Launey, whose qualification to speak on the subject was not called in question, testified that on the afternoon of July 14, 1942, he was called to the premises of the American Body & Equipment Company and was asked to bring a pulmotor, or resuscitator; that he immediately went, found and examined the body of John Thomas Anderson, used the resuscitator and oxygen tanks for forty-five minutes to no avail, expressed the opinion that the employe was dead when witness arrived, and, in answering an hypothetical question, expressed the opinion that his death was caused by an electric shock.

Appellant insists that because deceased was subjected to intense heat in the trailer, the fact that after being shocked, asked for artificial respiration, no burns being found upon the body, he must have died from heat shock. Dr. Launey testified that, in his opinion, the employe did not die from heat shock; that if he had suffered from such a shock, dizziness would have re-

sulted before death, and the fact that the body was wet with perspiration prevented it from being burned; that a person could be shocked to unconsciousness without being killed, but if the current goes over the heart it wouldn't take much electricity to cause death.

These circumstances, in our opinion, show that immediately on being shocked, deceased made an outcry for artificial respiration; owing to its severity, was unable to release his grip upon the drill or to cut off the current and continued to receive the current until the drill was torn from his grasp in the fall, but by that time had been electrocuted; his body lay upon the floor, rigid in the same bent or stooped position, with arms and hands in same position as when drilling. This evidence, in our opinion, is so conclusive as to forbid the thought that the employe's death was due to anything other than the electric shock, hence we overrule appellant's "Point Three."

■ In its "First Point," appellant contends that the judgment should be reformed and affirmed for only the sum of $250 funeral expenses, as per stipulation, because the evidence was insufficient to establish appellees' dependency; on the other hand, showed conclusively that appellees were not dependents within the meaning of the Workmen's Compensation Law.

The Anderson family consisted of Mr. and Mrs. Anderson and four children: Christine (now Mrs. Hall), two older boys (who have disclaimed), and John Thomas, the younger boy. In 1930, they resided in the State of Alabama, but in August of that year, the mother having died, the remaining members settled at Lubbock, Texas. At this time, Christine (Mrs. Hall) was eighteen years of age and John Thomas was only six. Thereafter, Christine served the family as her mother previously had done, with special reference to John Thomas. After moving to Lubbock, Christine finished her high school education and thereafter secured employment. In 1934 the father died and, for a short time, the four children remained together, but in 1937, she and John Thomas moved to Fort Worth, and in 1940, having married Howard M. Hall moved to Grand Prairie, Dallas County, where they were residing at the time of the death of John Thomas. The facts show that from the death of their mother until the day of his

death, John Thomas and Christine lived together. She mothered and cared for him just as a normal mother would have done, and with occasional help from the older brothers, supported and educated him, and their attachment for each other was similar to that of mother and son. It was shown that John Thomas was industrious, frugal, and at about thirteen years of age, began to have small earnings from various employments, increasing as he grew older until at the time of his death, in July 1942, he was earning $20 per week. He contributed to his sister from his meager earnings and assured her that his savings and earnings could be used for the benefit of the family when needed. He purchased gasoline for the family car, paid family laundry bills, and, for some time before his death, contributed regularly about $4 per week and at all times performed services around the home, in the house and on the place, feeding chickens, giving attention wherever it was needed, helping his sister in the kitchen and in her household work.

It seems that the deceased wanted to join the Navy, but in the spring of 1942, after his brother-in-law was drafted and subject to be called into the Army at any time, John Thomas gave up the idea of entering the Navy, stating that he would stay at home and take care of Christine while her husband was in the Army (her husband was later called and at the time of trial was at Camp Santa Anita, Calif., with the rank of private, first-class). On moving to Grand Prairie, appellees purchased a home worth about $4,000, but at the time of trial, same was mortgaged for approximately $3,000. It also appeared that four months during the spring of 1942, Mr. Hall was out of work, and John Thomas repeatedly offered to contribute to family expenses, if necessary, the money he had saved and was then earning, and it seems that, at times, it was necessary. During 1938, Mrs. Hall suffered from a nervous illness of a nature that was liable to recur at any time and just before the death of John Thomas, realized that she would have to take a rest and later was under the care of a physician from August, 1942, through the month of December, during which time, she was not employed.

If, under same circumstances, the mother of John Thomas had been alive, or even if a stepmother in loco parentis had survived, dependency, as a matter of law, would have existed, entitling the mother or the stepmother to compensation. See Vernon's Ann.Civ.St. Art. 8306, Sec. 8a, (Workmen's Compensation Law). Obviously, this legislation was based upon the known relationship that ordinarily exists between mother and son, or stepmother and stepson. We think the undisputed facts of the instant case show that, in a very real sense, that relationship existed between appellee and her dead brother, and that unquestionably, she stood in loco parentis. On the death of their mother, the sister inherited the trust of caring for this boy when he was but six years of age; from that time to the day of his death, he was mothered by her; they were inseparable, and in the main she supported and schooled him; and after marrying, he remained as a son in the family, performing such duties, myriad in number and unpredictable in nature, as a dutiful son would have performed for or at the behest of his mother: At about thirteen years of age, he began to secure various employments, and divided his meager earnings with his sister; paid family laundry bills and purchased gas for the family car; and for some time prior to his death, had given his sister regularly about $4 per week. Deceased freely and generously recognized a moral obligation to make contributions to his sister, and her dependence upon him progressively increased in view of the threatened recurrence of the nervous trouble and the absolute certainty that her husband would be inducted into the Army as a private soldier. Dependency is not based alone upon dollars or services, the value of which may be measured by definite rules, but may also be based upon such services as a child would render its mother, or one standing in loco parentis, that contributes in a substantial way to the support or assistance of the recipient, beyond their mere money value; in fact, the chief element of dependency may consist of personal services of that nature.

Numerous analogous cases have been cited, among others the following: In Southern Surety Co. v. Hibbs, Tex.Civ. App., 221 S.W. 303, 304, Syl. 3, where parents of a 19-year-old son claimed dependency (This was before the statute was amended, naming parents beneficiaries). The proof showed that the son rendered services on the farm, milked cows, cut wood, fed stock and did similar chores; prior to his death, left home to

find work in order to enable him to buy himself clothing, promising that, he would return and help with the farm work. On these facts, the San Antonio Court held that a jury question was raised (application for writ dismissed) and among other things, the Court said: " * * * the test of dependency is, not whether the family could support life without the services or contributions of the deceased, but whether they depended upon them as part of their income or means of living." The court cited two Georgia cases; one, Augusta Railway Co. v. Glover, 92 Ga. 132, 18 S.E. 406, 414, in which the Court said: " * * *. the services of a child to a mother, or a mother to a child, may well be reckoned as contributing substantially to the support of the recipient far beyond any money value which the services may have, and the chief element of dependency may be in respect of personal service of this nature." The other Georgia case cited was Fuller v. Inman, 10 Ga.App. 680, 74 S.E. 287, 291, where a mother sued for damages for the death of her son. Among other things, the Court said: " * * * If he (the son) performs substantial services of which she (the mother) receives the benefit in and about the household, this is a contribution to her support, and she is dependent upon the child, within the meaning of the law, without reference to whether he contributes one penny to her support." In Millers' Indemnity Underwriters v. Green, Tex.Civ.App. (by the Amarillo Court), 237 S.W. 979 (writ refused), parents sued as dependents of their minor son. The evidence showed that the parents owned and operated a confectionery at the time of the death of their absent son; proof was permitted showing the nature of work and chores deceased previously had performed on a farm operated by the parents, also permitted proof of a promise by the son that he would come back and help operate the confectionery; in other words, the court permitted testimony both as to his past services as well as his promises for the future. The court sustained a jury verdict holding that proof of partial dependency was sufficient. Lumbermen's Reciprocal Ass'n v. Warner, Tex. Com.App., 245 S.W. 664, 665, was a suit by parents to recover compensation for the death of a son. The father owned real estate and personal property of the value of about $7,000, and it was shown that the son had performed work on the farm and made occasional contributions of money to the family. This evidence was held sufficient to raise an issue as to dependency. Among other things, the Court said: "Support is a very flexible term and includes something more than the bare necessities of life. It includes also the ordinary comforts and conveniences which are reasonably appropriate to the parties' station in life * * *." In Texas Employers' Ins. Ass'n v. Peterson, Tex. Civ.App. (by the Amarillo Court), 251 S.W. 572, 574 (writ refused), parents claiming to be dependents of an unmarried son, 25 years of age, based upon occasional cash donations, purchases of clothing for his mother, and the payment of membership dues in a lodge to which his father belonged. Notwithstanding the father had a cash reserve of over $900 and was earning $150 per month, recovery by parents was sustained; among other things, the Court used the following language: "Dependency may be proven as a fact without arithmetical demonstration." The case of Consolidated Underwriters v. Free, Tex. Civ.App. (by the Fort Worth Court), 253 S.W. 941 (writ refused), is analogous; a married sister of deceased, claiming dependency brought the suit, and although being supported by her husband, it was held that she was entitled to compensation, the jury being instructed to take into consideration her circumstances in life, and that partial dependency was all the law required. In the case of Associated Employers' Reciprocal Ass'n v. Lawrence, Tex. Civ.App. (by the Amarillo Court), 264 S.W. 1038 (application for writ dismissed), the father sued for damages for the death of a 19-year-old son. The facts showed that the father was in comparatively independent financial circumstances; that the son left home about five or six months before his death and thereafter had not made any contributions in the way of services to his parents; the only contribution in money made during his absence was four or five dollars on one occasion and thirty dollars on another. The Court held that this evidence raised a jury issue, and, among other things, said: "The boy had been helping in the farm work, and when he went to work for himself his ability to contribute may have been very small, but the contributions were made, and we can make no distinction between money and labor." Jones v. Texas Employers' Ins. Ass'n, Tex.Civ.App. (by the Fort Worth Court), 268 S.W. 1004, 1007 (application for writ dismissed), was a suit by parents

524

claiming to be dependents of their 19-year-old son; the evidence showed that the parents were in snug financial condition. They were permitted to show that their deceased son made cash contributions to them and that he also did household chores such as washing dishes, sweeping, and attending cows and pigs. The trial court instructed a verdict for the Insurance Company on the theory that the issue of dependency was not raised by the evidence, but this was reversed by the Court of Appeals, saying, among other things: "We are of the opinion that at least it was a jury question as to whether the parents were partially dependent upon the contributions of their deceased son." The case of Texas Employers' Ins. Ass'n v. McDonnell, Tex.Civ.App. (by the Eastland Court), 278 S.W. 294 (no action by Sup.Ct.), was a suit by parents claiming to be dependents of a deceased son. The parents were in independent financial condition, but made proof that prior to the death of the son, he had joined the army and made salary allotment of $10 per month to his mother, and thereafter, when he returned from the army, worked and sent a portion of his money to his parents in spite of the fact that the parents had a clear income of $3,348 per year. In addition to some other matters, the court held that dependency was sufficiently established. In the case of Oilmen's Recip. Ass'n v. Gilchreas Tex.Civ.App. (by the Texarkana Court), 283 S.W. 633, 634 (writ refused), the grandparents of a minor, 16 years of age, instituted the suit, claiming to be dependents. The boy had lived with his grandparents for some time, his parents being dead; in deciding whether the evidence was sufficient to sustain findings of dependency, the court stressed the fact that deceased was industrious, thrifty, a boy of good habits; that he assisted his grandparents in various ways and saved money to buy books and clothes; that he worked in the family garden and did odd jobs about the house, such as cutting wood, etc. After leaving his grandparents' home, there is no proof that he sent money home, yet on leaving, stated he would send money to buy things for his sister. Upon these facts the Court concluded that the evidence was sufficient to raise an issue as to dependency, saying, among other things: "It is sufficient if the deceased employee contributes something which, in a substantial way, aids and assists the claimants to live."

These authorities show that dependency, within the meaning of the Workmen's Compensation Law, may exist without reference to the form or nature of the assistance rendered the recipient; that is, the assistance may consist of money contributed or financial assistance promised, any tangible thing of value; also services rendered or promised, whether or not the value of same is capable of being ascertained by any standard or measurement.

 The evidence, in our opinion, authorized the verdict of the jury on the issue of dependency; hence, we overrule appellant's "First Point" of error.

In its "Second Point," appellant contends that the court erred in its definition of the term "dependent" and in refusing to give the correct definition requested. We will not lengthen the opinion by copying the charge given and the charge requested; however, after a careful consideration, overrule the point because, in our opinion, there is no material difference in the meaning of the definition given and the one refused; in fact, if brought to a choice between the two, would prefer the charge given because, in our opinion, more comprehensible and understandable.

 Appellant's "Fourth Point" is based on the contention that the evidence was insufficient to establish claimant's right to a lump sum settlement. As before shown, the jury found that manifest hardship and injustice will result to claimant if the compensation allowed is not paid in a lump sum. The record discloses that at the time of trial the compensation claimant was alone, her husband being in the Army; the only financial assistance she could expect from that source was the limited allotment to the wife of a private soldier. John Thomas' death deprived her of the assistance she would have received had he been alive and, although at work and earning a salary, was liable at any time to become incapacitated by a recurrence of the nervous trouble from which twice before she had suffered, the last time from August through December, 1942, when she ceased work and was under the care of a physician, and had been informed that she might expect a return of her illness. The amount of the recovery, after deducting attorney's fees, would be just about sufficient to clear the homestead of debt. In the case of Indemnity Ins. Co., etc., v. Wright, 69 S.W. 2d 438, 440, we had under consideration a similar question and the language there used

is equally applicable to the instant case; we said: "The question of allowing or refusing a lump-sum settlement is largely a matter of discretion with the trial court and, unless an abuse of discretion is shown, its action should be approved. In Georgia Casualty Co. v. Little, Tex.Civ.App., 281 S.W. 1092, 1095, the Austin court, through Judge Baugh, said: 'The question of a lump sum payment is a matter addressed largely to the discretion of the trial court, and in the absence of abuse of such discretion his judgment should be sustained,' citing Texas Employers' etc., v. Boudreaux, Tex.Civ. App., 238 S.W. 697; Texas Employers', etc., v. Downing, Tex.Civ.App., 218 S.W. 112." The evidence, in our opinion, fully authorized the verdict, hence we overrule appellant's "Fourth Point."

We have given careful consideration to all points of error urged by appellant for reversal and, failing to find reversible error the same are overruled and the judgment below is affirmed.

Affirmed.