CONSOLIDATED UNDERWRITERS v. FREE.   (No. 10146.)

(Court of Civil Appeals of Texas. Fort Worth. April 7, 1923. Rehearing Denied May 19, 1923.)

I. Master and servant �köö417(4½)—Objection to delay in taking appeal in compensation case held waived by appearance.

A petition for compensation, after disallowance by the Industrial Accident Board, designated defendant as a Texas corporation, but in an amended petition correctly alleged defendant to be a mutual reciprocal association of Missouri. The amended petition was filed more than 20 days after plaintiff had given notice that she would not abide by the decision of the Industrial Accident Board. After the filing of the first petition, plaintiff and one of defendant's attorneys filed an agreed statement of facts, and such attorney filed an answer not designating defendant by name. Later, after filing of plaintiff's amended petition correcting defendant's designation, the same attorney in behalf of defendant invoked Workmen's Compensation Law (Complete Tex. St. 1920, art. 5246—44 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—44]), as bar to plaintiff's suit, because no suit had been filed against defendant within the required 20 days. Held, under the circumstances, that the agreed statement of facts and the original answer were impliedly authorized by defendant and constituted an appearance and amounted to a waiver of its right to complain that suit was not instituted against it by the filing of the original petition within the statutory time.

---

**2. Master and servant ⊕⟹361—Foreman acting as peace officer held "employé" under Compensation Act.**

Under Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82), defining an "employé," a lease foreman whose duties include the preservation of order within the limits of the oil lease and who received injuries resulting in his death while attempting to preserve order, was an employé, though such duties might have been lawfully performed by a public peace officer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

**3. Master and servant ⊕⟹375(1) — Injury to foreman quelling drunken brawl held compensable as injury arising out of employment.**

The foreman of an oil lease, whose duties included the preservation of peace and order on the lease, was acting within scope of his employment when attempting to quell a disturbance between a drunken employé and such employé's wife, and injuries received by him in so doing which resulted in his death arose out of his employment within the meaning of the compensation statute (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), notwithstanding the absence of evidence that the peace and quiet of other people on the lease was disturbed by the brawl.

**4. Master and servant ⊕⟹388—Partial dependency will sustain award of compensation.**

A sister's partial dependency upon her brother's earnings will authorize her recovery of compensation for his death under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91).

**5. Trial ⊕⟹194(19)—Instruction on dependency within Compensation Act not erroneous as on weight of testimony.**

In a sister's action under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) for compensation for the death of her brother, an instruction that the jury might take into consideration plaintiff's circumstances in life was not upon the weight of the testimony, since it referred to no particular testimony, and her circumstances in life were pertinent to the issue of her dependency upon her brother's earnings.

**6. Trial ⊕⟹351(5), 352(1, 5) — No error in refusing to submit special issue on weight of evidence and which assumed a fact and which was covered by special issue submitted.**

In an action for compensation for death of plaintiff's brother while quelling the disturbance on the premises of an oil lease of which he was foreman, where the court submits special issues whether the blows causing decedent's injuries were struck for reasons personal between him and his assailant, and whether the injuries were sustained in the course of his employment, it was not error to refuse to submit the issue whether his injuries were caused by an indecent proposal to the wife of his assailant; such requested issue being upon the weight of the evidence and assuming decedent to have been guilty of unlawful acts, and the special issues submitted, though in general terms, sufficiently embodied the issue refused.

**7. Master and servant ⊕⟹417(5)—Compensable injury by infection causing death held for jury.**

Under Workmen's Compensation Law (Complete Tex. St. 1920, art. 5246—82 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82]), defining injury as including diseases or infection naturally resulting therefrom, where the testimony conclusively showed that decedent's death resulted from septic meningitis resulting from an infection from a wound received by him in quelling a disturbance on his employer's property, held, in the absence of any evidence as to negligent treatment of his injury, the court cannot say as a matter of law that the septic meningitis from which he died was not the natural result of the injury.

**8. Master and servant ⊕⟹373—Compensation for death recoverable, though immediate cause of death was infected wounds.**

Under Workmen's Compensation Law (Complete Tex. St. 1920, art. 5246—82 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82]), compensation may properly be allowed for death, notwithstanding the immediate cause of the death was septic meningitis resulting from an infection of wounds, if that ailment and the ensuing death were natural and probable consequences of the injury, and if, in the light of the attendant circumstances, consequences of that character reasonably should have been foreseen.

**9. Master and servant ⊕⟹405(5)—Evidence of compensation claimant's dependency held sufficient.**

Evidence held to support finding that compensation claimant was a dependent sister within the meaning of Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—15) notwithstanding she was supported in part by her husband.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Proceeding under the Workmen's Compensation Act by Nancy E. Free for the death of Charles H. Neely, opposed by the Consolidated Underwriters, insurers of Moore & Roeser, the employers. The decision of the Industrial Accident Board refusing compensation was rejected by the claimant, and she brought suit to set aside the decision and to recover compensation. Judgment for claimant, and defendant appeals. Affirmed.

E. C. Gaines, of Austin, for appellant.
Grindstaff & Zellers, of Weatherford, for appellee.

DUNKLIN, J. Chas. H. Neely was an employé of Moore & Roeser, who owned and operated an oil lease located on a tract of land consisting of 160 acres, situated near the town of Caddo, in Stephens county, Tex. The owners of the lease were engaged in the pro-

⊕⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

duction and sale of the oil from wells situated thereon. Several houses had been erected by them on the lease, which were occupied by their employés. One of those houses was occupied by R. L. Frady, an employé, and his family, and Chas. H. Neely boarded with the family, occupying one of the rooms in the house. On the night of October 24, 1919, a controversy arose between Neely and Frady, as a result of which Frady, who was in an intoxicated condition, became enraged and struck Neely on the head with an automobile jack, fracturing his skull. From the wound so received, Neely never recovered, and died during the month of February, 1920. After his death and during the summer of 1920, his sister, Mrs. Nancy E. Free, of Henrietta, Okl., filed a claim with the Industrial Accident Board of the state for compensation claimed by reason of the death of Neely, as against the Consolidated Underwriters, insurers, with whom Moore & Roeser had procured a policy of insurance under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) they being subscribers under the law.

On ·December 16, 1920, the Industrial Accident Board, after due hearing, rendered its decision refusing Mrs. Free any compensation; the basis of such finding being that the injury sustained by Neely was not received in the course of his employment, and also that Mrs. Free was not a dependent sister of Neely at the date of his death, within the meaning of article 5246—15 of the Workmen's Compensation Law.

On December 29, 1920, Mrs. Free gave notice to the Industrial Accident Board and the ·insurance company that she would not abide by the decision of the·Board, and within 20 days after such notice, to wit, on January 17, 1921, she, joined by her husband, instituted this suit in the ·district court of Stephens county, to set aside the decision of the Industrial· Accident Board and to recover compensation as provided by the Workmen's Compensation Law. Upon the trial of that suit, she recovered judgment for. compensation at the rate of $15 per week for a period of 360 weeks, and from that judgment the defendant has appealed.

In plaintiff's original petition, the defendant was designated as the "Consolidated Underwriters, a corporation, duly incorporated, and duly and legally permitted to do business ·in the state of Texas, with T. H. Mastin, its agent, residing in Beaumont, Jefferson county, Tex." In plaintiff's first amended original petition, upon which the case was tried, the defendant was designated as—

"Consolidated Underwriters, a mutual reciprocal association of Kansas City, Jackson county, Mo., and being duly authorized and having authority and a permit to do business in the state of Texas, represented in this state by T. H. Mastin & Co., its agents, residing in Beaumont, Jefferson county, Tex."

That amended petition was filed September 3, 1921, which was more than 20 days after plaintiff gave notice that she would not abide by the decision of the Industrial Accident Board.

By article 5246—44, of the Workmen's Compensation Law, Complete Texas Statutes, one claiming compensation for injury to an employé, and who appeals from a decision of the Industrial Accident Board, must file suit within 20 days after he has given notice that he does not consent to abide by the decisions of the Board. Defendant invoked that provision of the statute in support of its claim that plaintiff's suit was barred because no suit had been instituted against it until the amended petition was filed. In other words, the plea presented the contention that the suit as originally instituted was against another and different party from that described as the defendant in the amended petition, and appellant's first assignment of error is addressed to the action of the court in overruling that plea.

On March 8, 1921, a pleading was filed designated as the "original answer of the defendant," signed "Jackson & Woods, attorneys for defendant." That pleading contained a general and special exception to "plaintiff's petition," and also a general denial of the allegations therein contained. In each instance the party filing the same was designated as "defendant," without giving its name. It thus appears that that answer was addressed to plaintiff's original petition. On July 21, 1921, and prior to the filing of plaintiff's amended original petition, the following agreement was entered into and filed with the papers of the cause by attorneys for plaintiff and for the Consolidated Underwriters:

"Nancy E. Free et al. v. Consolidated Underwriters. No. 1728–B. In District Court 90 Judicial District, Stephens County, Texas. Now comes plaintiff Nancy E. Free and plaintiff Harry Free by their attorneys of record, Grindstaff & Sellers, and the defendant, Consolidated Underwriters, by its attorneys of record Jackson & Woods and agree that the facts hereinafter set out are true and that the said facts hereinafter set out may be used as evidence by plaintiffs or defendant on the trial of the case and each party hereto agrees and consents that the facts hereinafter set out are true and may be introduced in evidence on the trial of the above numbered and entitled cause without objection from either plaintiffs, or their attorneys of record, said facts being as follows, to wit:

"No. 1. On the 24th day of October 1919, Moore & Roeser was a partnership doing an oil business in Stephens county, Tex. On this day and date the said Moore & Roeser was a subscriber under the Workmen's Compensation Law, Acts of the Regular Session of the Thirty-Fifth Legislature, chapter 103 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) and had in full force and effect a policy of insurance with defendant herein, condi-

tion to pay to employés and their beneficiaries, in case of death, of Moore & Roeser, such compensation as is provided for the Workmen's Compensation Law of Texas.

"No. 2. Moore & Roeser and the Consolidated Underwriters both had immediate notice and were duly notified of the injury and death of Charles H. Neely and that the plaintiffs duly filed claim for compensation within the time required by law on account of death of said Charles H. Neely, with the Industrial Accident Board at Austin, Tex. (No. 3 struck out.)

"No. 4. That on the 16th day of December, 1920, the Industrial Accident Board at Austin, Tex., entered its final ruling and decision on the claim of plaintiffs herein holding that the said plaintiffs were not entitled to compensation for the death of Charles H. Neely; that within 20 days as allowed by the Workmen's Compensation Law of Texas, plaintiffs gave proper notice that they and each of them were not willing and would not abide by the final ruling and decision of said Board; that within 20 days from the date giving said notices plaintiffs filed suit in the district court of Stephens county,' Tex., to set aside the final ruling and decisions of the Industrial Accident Board as made and entered on the 16th day of December, A. D. 1920.

"The above facts are agreed to by the attorneys of record for both plaintiffs and defendant, and agreed that the same may be introduced by either party to the above entitled and numbered cause.

"Dated 21st day of July, 1921. Grindstaff & Zellers, Attorneys for Nancy E. Free et al. Jno. W. Woods and W. C. Jackson, Attorneys for Consolidated Underwriters."ᵢ

[1] There is no showing in the record that the agreement so entered into and the original answers so filed were not intended as the acts of the insurer, who was at all times intended to be sued by plaintiff, or that the same were not authorized by the defendant against whom judgment was finally rendered. In fact, it appears that W. C. Jackson, one of the attorneys who signed the written agreement, was also one of the attorneys who filed the plea presenting the defense of limitation. Under such circumstances, we think it is clearly to be implied that appellant authorized the filing of the original answers and the execution of the written agreement, and that the answers and agreement constituted an entry of appearance by appellant and amounted to a waiver of its right to complain that the suit was not instituted against it by the filing of the original petition, which was filed within 20 days after plaintiff gave notice that she would not abide by the decision of the Industrial Accident Board. McCord-Collins Co. v. Prichard, 37 Tex. Civ. App. 418, 84 S. W. 388, writ of error denied; Weatherford, M. W. & N. W. Ry. Co. v. Crutcher (Tex. Civ. App.) 141 S. W. 137; Grand Lodge A. O. U. W. v. Bollman, 22 Tex. Civ. App. 106, 53 S. W. 829, writ of error denied; Williams v. Abilene Ind. Tel. & Tel. Co. (Tex. Civ. App.) 168 S. W. 402; Anderson v. Zorn (Tex. Civ. App.) 131 S. W. 835; Middle-

brook v. Davis-Bradley Mfg. Co. (Tex. Civ. App.) 27 S. W. 169; Manistee Mill Co. v. Hobdy, 165 Ala. 411, 51 South. 871, 138 Am. St. Rep. p. 73; 4 Fletcher Cyclopedia Corporations, §§ 30, 80; So. Pac. Co. v. Graham, 12 Tex. Civ. App. 565, 34 S. W. 135.

The true name of the insurer and of the appellant here, "Consolidated Underwriters," was alleged as the defendant in both petitions. Its designation as a corporation in the original petition and as a mutual reciprocal association in the amended petition were matters of identification. The insurer's liability was the same whether it was a corporation or an unincorporated joint-stock company or association. Articles 6149 to 6153, Rev. Statutes. That fact and the further fact that there was no misnomer of the insurer as defendant in the original petition, in connection with the filing of an answer of that petition by the insurer and the "defendant," and the execution of the written agreement as to facts to be considered upon the trial of the case in the name of the "Consolidated Underwriters," who is designated in the agreement as defendant in the suit then pending, without any suggestion that the defendant was not a corporation, as alleged in the original petition, distinguish this case from the leading cases cited by appellant in support of its assignment, such as So. Pac. Co. v. Block, 84 Tex. 21, 19 S. W. 300; Bickford v. Refugio Land & Irr. Co. (Tex. Civ. App.) 143 S. W. 1188.

In plaintiff's petition, the following were the allegations of the duties of Chas. H. Neely under his employment by Moore & Roeser:

"It was the duty of the said Chas. H. Neely as lease foreman, as aforesaid, for ·the said firm of Moore & Roeser, as aforesaid, to preserve order, and to quiet and quell all disturbances or disorders on the said lease; that it was his duty to so quiet and quell all disturbances and disorders both day and night; that the said Chas. H. Neely had been so instructed to preserve order and to quiet and quell' all disturbances both day and night on the said lease; that it was necessary that the said lease foreman do and perform the duties of preserving order and quieting and quelling disturbances or disorders in order to protect the property, wells, machinery, and men located on the said lease and in order to allow and permit the employés of the said company and their families to sleep and get the usual rest required to be able to perform the duties of their work; that the duty of preserving order and quieting and quelling disturbances and preventing quarrels and friction on the said lease was one of the usual, customary, and general duties of the lease foreman in the Caddo oil field in October, 1919."

It is insisted by appellant that, as the duty to preserve the public peace is committed by law solely to public officers, the employment of Neely for the purpose alleged could not rightfully bring his acts in the discharge of such duties within the‚ purview of the em-

ployment contemplated by the Workmen's Compensation Law. One of Neely's employers testified as follows:

"Chas. H. Neely had control, and it was his duty to look after the tools and machinery on the lease at night during October, 1919. The firm of Moore & Roeser did not employ a special night watchman to look after the lease and property during October, 1919, but Charles H. Neely performed the duties of night watchman during October, 1919, and looked after and cared for the lease, property, and men at night on this lease. In the absence of a night watchman, it was Charles H. Neely's duty to quell or quiet any disturbance or disorder on the lease belonging to Moore & Roeser. Charles H. Neely was instructed to perform and do any and all duties that came within the scope of a regular lease foreman. I had instructed Charles H. Neely in all his duties as lease foreman, and he had control of the property in my absence. On the 24th day of October, 1919, it was the duty of Charles H. Neely to protect all property, tools, and machinery located on the lease. He had as full and complete authority and control over that lease on the 24th of October, 1919, as I would have had, had I been present on the lease, and in the absence of a night watchman it was his duty to perform the duties of a night watchman with reference to that lease."

W. D. Wade testified as follows:

"I have worked on oil leases about two years and a half and was foreman on the lease a short time after Neely left. I think I know the duties of an oil lease foreman in the Caddo oil fields of Stephens county, Tex., and knew the duties required of Charles H. Neely as foreman on that lease in October, 1919. It was the duty of Charles H. Neely on October 24, 1919, to quell and quiet any disturbance or disorder occurring at night on this lease in question."

T. B. Satterwhite testified as follows:

"In the immediate locality of this trouble on the lease, there was, as I remember, only three houses, sitting in row north and south and Frady occupied the middle house. There was a house just north of the one in which Frady lived, I think about 30 feet, in which Mike Gleason lived at that time. There was another house just south about 90 feet in which Claude Huffman lived at that time."

Mrs. M. H. Gleason testified as follows:

"Frady was drunk and was loud and boisterous. He chopped his words up, and I could not understand all that he said. There wasn't any sense to what he said, and he staggered around and reeled. I would say he was crazy drunk. I had seen him drunk twice before but this time he was drunk a week. I saw him in bed in a drunken stupor with jake bottles empty lying around the place. I would say on the night of October 24th Frady was crazy drunk. He acted like he was clear off, the way, he ran and hollered and fighting the air. I don't think he knew what he was doing. He did not seem to know what he did. When he came back after yelling and hollering, he didn't seem to know that he had struck Neely. When he came back his wife told him he had nearly killed

253 S.W.—60

Neely, and he said 'Why, what did I do to him?' and she said that he had struck him with a car jack. Frady said, 'No; Neely is my friend; I didn't hurt him nor I wouldn't hurt him.' * * * He (Frady) started the car and she seeing he got the best of her by the car being locked, as she thought it was, raved and began beating him in the face, then seized a club and beating him over the head at that time, and he jumped out of the car and grabbed hold of her. She screamed for help, calling for Mr. Neely. Mr. Neely being in his private room heard the racket and heard her call for help. Mr. Neely walked out very peacefully and began asking Frady to quiet down, and he wanted him to stop his noise making. Mr. Neely just went between Frady and his wife and separated them. He merely went between Frady and his wife. Mr. Neely just seemed to push Frady and his wife away from each other, and as he was doing this Frady fell down in a heap. Frady staggered up on his feet and went to the car. Neely just turned around and walked toward the rain barrel and began talking with Mr. Cobbum; his back being to Frady. Mr. Neely seemed to think the trouble was all over, and that Frady would drive on. Frady staggered out of the car, grabbed the jack and started striking in a wild manner like a crazy man. Frady went toward Mr. Neely whose back was still turned, and hit him a blow over the head, after which he ran wild with the jack in his hand for a quarter of a mile and then back to the bunk house asking the men for protection, saying they were after him. He was hollering when he went away, striking as though he were striking at something. I could hear him holler when he returned. He acted as though somebody was after him."

W. B. Wade again testified:

"I have seen Frady drunk—have seen him drunk in Caddo several times and then have seen him drunk several times on the lease. He was accustomed to reckless driving in his car and wanted to get out with a bunch of wild women whenever he was drunk. In fact he was accustomed to playing tough and putting on a drunken parade whenever he was drunk. I have seen him many times when he was drunk he would stagger and wanted to get back at people or quarrel with them."

Article 5246—82 of the Workmen's Compensation Law, reads in part as follows:

" 'Employé' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation. * * *

"The term 'injury sustained in the course of employment,' as used in this act, shall not include:

"1. An injury caused by the act of God, unless the employé is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public.

"2. An injury caused by an act of a third person intended to injure the employé because

of reasons personal to him and not directed against him as an employé, or because of his employment.

"3. An injury received while in a state of intoxication.

"4. An injury caused by the employé's willful intention and attempt to injure himself, or to unlawfully injure some other person, *but shall include* [italics ours] all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employé while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises ·or elsewhere."

As shown in the allegations of plaintiff's petition, copied above, it ·was alleged that:

"The duty of preserving order and quieting and quelling disturbances and preventing quarrels and friction on the said lease was one of the usual, customary, and general duties of the lease foreman in the Caddo oil field in October, 1919."

[2] And since the testimony of witnesses quoted above sustains that allegation, we overrule the contention that Chas. H. Neely was an employé within the meaning ˙of the provisions of the statute quoted, even though it be further said that the services for which he was employed might have been lawfully performed by a public peace officer.

In addition to a general denial, appellant pleaded specially: (1) That Neely did not die as the natural result of the injury inflicted upon him by Frady, but by reason of an aggravated cause, to wit, septic meningitis, resulting from an infection of the wound he received on his head, which was not a natural result of the wound which was inflicted October 24, 1919, while his death did not occur until February, 1920. (2) That the injury inflicted by Frady upon Neely was not received by Neely in the course of his employment. (3) That Neely's injury was received while in a state of intoxication. (4) That Neely "being intoxicated and in his room in the house occupied by Frady and his wife while Frady was not at home he made improper and indecent advances to the said Mrs. Frady, causing her to flee from home, and when the said Frady returned ·and learned these facts and sought an explanation, the said Neely being intoxicated, entered into a fight rather than an explanation, as a result of which he was injured."

The special issues submitted to the jury, with their findings thereon, were as follows:

"1. Was the injury received by Chas. H. Neely on October 24, 1919, received by him while he, the said Chas. H. Neely, was in a state of intoxication? Ans. No.

"2. Was the injury received by Chas. H. Neely on October 24, 1919, caused by the attempt of said Chas. H. Neely to unlawfully injure R. L. Frady? Ans. No.

"3. Was the injury inflicted by R. L. Frady upon Chas. H. Neely intended to injure the said Chas. H. Neely because of reasons personal to him and not directed against him as an employé, or because of his employment? Ans. No.

"If you have answered any one of the three foregoing special issues in the affirmative, then you need not answer the following special issues:

"4. Had R. L. Frady and his wife, or either of them, by loud talking or other noise created a disturbance on said lease prior to the time said Neely interfered? Ans. Yes.

"5. Were the injuries sustained by the said Chas. H. Neely on the 24th day of October, A. D. 1919, sustained by him in the course of his . employment? Ans. Yes.

"If you answer special issue No. 5 in the negative, then you need not answer the following special issue, but if you answer in the affirmative, then answer:

"6. Was the septic meningitis or other infection that caused the death of Chas. H. Neely the natural result of the injury received on October 24, 1919? Ans. Yes.

"7. Was the plaintiff, Nancy E. Free, as the sister of Chas. H. Neely, deceased, taking into consideration her circumstances in life, dependent wholly or in part upon the contributions of the deceased Chas. H. Neely for her support on the 24th day of October, A. D. 1919? Ans. Yes."

Appellant requested the submission of the following special issue:

"Had R. L. Frady and his wife, or either of them, by loud talking or other noise disturbed the peace or sleep of the people residing on said lease prior to the time the said Neely interfered?"

Error has ‚been assigned to the refusal of the court to submit that issue and also to the action of the court in overruling appellant's objection to special issue No. 4, which was submitted by the court because that issue, as submitted, did not limit the scope of the term "disturbance," as used therein, to a disturbance of the peace or sleep of the people residing on the lease. In this connection, appellant has pointed out that there was no evidence to show that the peace or sleep of other people residing on the lease was disturbed by the loud talking or other noise by Frady and his wife.

[3] Those assignments are overruled, since we believe it was within the scope of Neely's employment to quell such a disturbance as the testimony tended to show Frady was creating at the time Neely interfered and attempted to stop him, even in the absence of any testimony to show that the peace or sleep of any other employé was disturbed, since such conduct clearly was calculated to produce that effect, and the owners of the lease, through Neely as their employé, had the right to prevent such conduct on their premises by lawful means, and that Neely's injury arose out of his employment within the meaning of the statutes. Lumbermen's Reciprocal Ass'n v. Behnken (Tex. Sup.) 246 S. W. 72; Re McNicol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, and other decisions in note page

309; also decisions in note 6 A. L. R. p. 579.

[4] Complaint is also made of the seventh special issue submitted to the jury, on the ground that it was upon the weight of the evidence in that the jury was told, in effect, that in determining whether or not plaintiff was a dependent of Chas. H. Neely within the meaning of the Compensation Law, they could take into consideration her circumstances in life, and also that it was further erroneous, in that the issue of dependency in part, upon the contributions of Neely for support, was not authorized by the statutes. Instructions to the effect that dependency in whole or in part would sustain a recovery have been approved in the following decisions: Southern Surety Co. v. Hibbs (Tex. Civ. App.) 221 S. W. 303; Lumbermen's Reciprocal Ass'n v. Warner, (Tex. Civ. App.) 234 S. W. 545; Id. (Tex. Com. App.) 245 S. W. 664; Millers' Indemnity Underwriters v. Green (Tex. Civ. App.) 237 S. W. 979, writ of error denied; 28 R. C. L. p. 77; L. R. A. 1917D, 157–159 note; Complete Texas Statutes, art. 5246—15.

.[5] The further instruction that the jury might take into consideration plaintiff's circumstances in life was not upon the weight of the testimony, since it did not refer to the testimony of any particular witness, and plaintiff's circumstances in life were clearly pertinent and material to the issue of plaintiff's alleged dependency and necessarily would have to be considered by the jury in determining that issue. Appellant has assigned error to the refusal of the court to submit the following issue requested by it:

"Was the injury received by Chas. H. Neely on October 24, 1919, caused by the unlawful act and conduct of said Neely toward Mrs. R. L. Frady?"

Mrs. R. L. Frady testified that on the night of that occurrence, while she was in bed in her home and during her husband's absence, Neely came from his room into her room in his night clothes and made an indecent proposal to her; that thereupon she gathered up her two babies who were in bed with her, put on her slippers and apron over her night gown, and ran to a neighbor's house, where she remained until her husband returned; that, when her husband returned and inquired why she had gone to the house of a neighbor, she informed him of the insult which Neely had offered her, but further advised her husband not to have anything to say to Neely about the matter until the following morning because Neely was drunk. Continuing, she further testified as follows:

"About the time I got through relating that, Mr. Neely came out to the back where we were, and he says to my husband, 'So you have gotten home.' My husband told him, 'Yes;' and Neely says, 'I think it is about time,' and wanted to know if he had brought him a bottle of jake. Mr. Frady told him 'No' that he had not, and then Mr. Frady says to him, 'Has my wife ever said or did anything to cause you to think you could do as you have done by her to-night?' And Mr. Neely says, 'No; she has not.' Mr. Frady asked him why he did it, and he said because he wanted to, 'But I think I will bump you off.' Then he hit Mr. Frady and knocked him down. I fell also, as I had hold of Mr. Frady's arm. Then when Mr. Frady got up he knocked him down the second time; the best I remember I think he knocked him down the third time. Then Mr. Frady got up. Mr. Neely was standing to the back of the car, even with the back seat of the car. Mr. Frady got up and stepped on the running board and reached in and grabbed the automobile jack and hit Mr. Neely on the head, and Mr. Neely fell. I don't know what Mr. Frady did then as I run. I don't know what happened after that; I had both children in my arms at the time and I ran."

[6] R. L. Frady testified substantially to the same facts related by his wife as to what was said and done after his return home.

The language of the fifth special issue submitted by the court, while general in its terms, was sufficient to require a finding as to whether or not Neely's injury was caused by an indecent proposal by him to Mrs. Frady, as was also the language employed in the court's issue No. 3 which was in the exact language found in article 5246—82 of the Workmen's Compensation Law.

Appellant excepted to the refusal of the court to submit the requested issue last quoted, "because there is no issue submitted in the main charge of the court touching the defense pleaded and evidence offered thereon as to the unlawful conduct of Chas. H. Neely toward Mrs. R. L. Frady."

The requested issue so refused was upon the weight of the evidence, because it assumed that Neely had been guilty of unlawful acts and conduct toward Mrs. R. L. Frady, and therefore there was no error in the court's refusal to submit it. If the exception presented by appellant, in the language quoted, be construed as an exception to the failure of the court to submit the requested issue in an unobjectionable form, then appellant is in no position to complain of such failure, since special issues Nos. 3 and 5, which were given to the jury in the court's charge were sufficient to comprehend, in general terms, to say the least, the defense embodied in the requested issue which was refused; and in such circumstances it was incumbent upon appellant to prepare and present to the court a special issue in proper form, if it desired the submission of the special group of facts which were relied upon as a defense and included in the requested issue, and which there was evidence tending to support. Article 2161, Rev. Statutes; Western Union Tel. Co. v. Goodson (Tex. Civ. App.) 217 S. W. 183; First Nat. Bank of Amarillo v. Rush (Tex. Com. App.) 246 S. W. 349; Texas City Trans. Co. v. Winters (Tex. Com. App.) 222 S. W. 541; Alamo Iron Works v. Prado (Tex. Civ. App.) 220 S. W. 282.

It was shown by uncontroverted proof that, from an infection in the wound on Neely's scalp, septic meningitis set up which was the immediate cause of his death. But neither of the two physicians who treated him, and who were introduced as witnesses, testified to any negligent treatment of the injury. Dr. Leach, one of those witnesses, testified:

"A small percentage of wounds or injuries such as was on Mr. Neely's head may and likely would produce septic meningitis."

Dr. Artz testified, in part, as follows:

"I do not mean to testify that a wound such as I found on Neely's head would necessarily become infected, or that the natural consequences of such a wound would be death in all cases, but if infected as this wound was it would be."

[7] In such circumstances, we are unable to concur in appellant's contention that the testimony conclusively showed that the septic meningitis from which Neely died was not the natural result of the injury, and therefore did not come within the purview of the portion of article 5246—82 of the statutes, which reads:

"The terms 'injury' or 'personal injury' as used in this act, shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom."

[8] The doctrine of natural and probable consequences of an act is illustrated in the law of negligence, and in order for the jury to conclude that the death of Neely was the natural result of the injury he received, it was not necessary to find that the injury was the immediate cause of his death, and to exclude the intervening agency of septic meningitis, if that ailment and the ensuing death were natural and probable consequences of the injury, and if, in the light of the attendant circumstances, consequences of that character reasonably should have been foreseen. T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Meyer v. Milwaukee Electric Ry. & Light Co., 116 Wis. 336, 93 N. W. 6, and other decisions there cited; Workmen's Compensation Act, C. J. Treatise, pp. 65 and 66, and numerous decisions there cited.

[9] We are of the opinion further that the testimony of plaintiff was sufficient to support the finding of the jury that she was a "dependent sister" of Neely at the time of his death, within the meaning of article 5246—15 of the statutes, and entitled to recover as such, under the provisions of the Workmen's Compensation Law, even though it also showed that she was supported in part by her husband. The jury were the exclusive judges of her credibility as a witness and of the weight of her testimony, and we are unable to disturb their findings upon that issue of fact

which it was their province to determine. 28 R. C. L. p. 772.

For the reasons noted, all assignments of error are overruled, and the judgment is affirmed.