## E. K. LOCAL INS. CO. NO. 1 OF SEYMOUR v. LILLY.   (No. 11880.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 19, 1927.

1. Insurance ⬳825(3)—Whether insured permanently lost use of hand and sustained permanent partial disability by injury thereto held for jury.

In action on accident benefit certificate, evidence on issues whether plaintiff sustained permanent loss of use of hand and became permanently partially disabled by reason of injury thereto *held* to show a conflict for jury's determination.

2. Insurance ⬳819(4)—Evidence of permanent loss of use of hand and permanent partial disability by injury thereto held to sustain verdict for insured.

In action on accident benefit certificate, evidence on issues of permanent loss of use of hand and permanent partial disability by injury thereto *held* to sustain verdict and judgment for plaintiff.

3. Trial ⬳215—Charges defining "loss of use" of hand by insured and "permanent partial disability" held not erroneous as general charges in case submitted on special issues (Rev. St. 1925, art. 2189).

In action on accident benefit certificate, explanatory charges that "loss of use" of hand meant that it was so affected permanently as substantially and materially to impair its use in practical performance of its functions in laborer's pursuit, and that jury should find that plaintiff was permanently partially disabled by injury thereto, if he sustained partial physical inability to perform labor in which engaged at time or other work open to him and will not recover therefrom, *held* not in violation of Rev. St. 1925, art. 2189, or rule against general charge in case submitted on special issues.

4. Trial ⬳194(20)—Charge defining "loss of use" of hand as substantial impairment of use in performance of functions in insured's pursuit held not on weight of evidence.

In action on benefit certificate indemnifying insured for permanent total disability or per-

manent partial disability, explanatory charge that "loss of use," in special issue whether plaintiff sustained permanent loss of use of left hand, meant that hand is so affected permanently as substantially and materially to impair its use in practical performance of its function in laborer's pursuit, *held* not erroneous as on weight of evidence.

5. Insurance ⬳146(3)—Policy provision reasonably susceptible of two meanings will be interpreted most favorably to insured, unless limitations on liability are clearly stated.

Insurance contracts being prepared entirely by insurer, skilled in use of words, provision reasonably susceptible of two meanings, one of which is broader than other, will be given interpretation most favorable to insured, unless limitations on liability are clearly stated.

6. Insurance ⬳791(2)—Definition of "permanent partial disability" in benefit certificate held not to exclude permanent partial physical inability to perform work open to insured; "total permanent disability."

Definition of "total permanent disability," as including loss of use of both hands or one hand and one foot, and of "permanent partial disability" as including loss of use of one hand, in benefit certificate insuring against either of such disabilities, *held* not necessarily to exclude permanent partial physical inability to perform labor in which engaged at time of injury or other work open to insured, as defined by explanatory charge given in connection with special issue of permanent partial disability by injury to hand.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Permanent Disability; First and Second Series, Total Disability.]

Appeal from District Court, Jack County; F. O. McKinsey, Judge.

Action by J. O. Lilly against the E. K. Local Insurance Company No. 1 of Seymour. Judgment for plaintiff, and defendant appeals. Affirmed.

J. A. Wheat, of Seymour, and H. C. McClure, of Jacksboro, for appellant.

Grindstaff & Zellers, of Weatherford, for appellee.

CONNER, C. J. Under the undisputed evidence and admissions of the parties, we think it is sufficiently comprehensive and accurate to say that this is an appeal from a judgment in favor of J. O. Lilly against the E. K. Local Insurance Company No. 1 of Seymour, Tex., a mutual benefit association. The certificate of membership contained the following pertinent provisions, to wit:

"Total permanent disability or death:

"As herein provided, this policy is made payable in the sum of $1,000, but in case of death or total disability of the insured herein at any time before said membership shall reach 1,000 members in good standing the association will pay to the assured or beneficiary only $1 per member then in good standing. However, when the actual membership shall exceed 1,900 in

numbers, this policy shall be payable to assured or beneficiary in case of permanent disability or death of the assured in the sum of $2,000, respectively, and shall so remain, until the membership shall from some calamity or other reason be reduced to a number below 1,400, in which event said policy shall drop back to and become payable in the sum of $1,000 under the same conditions as above stated.

"After said membership shall exceed 1,900, all assessments for death or permanent disability shall be $1.50 per member, and shall so remain until the membership shall be reduced below the said 1,400, when it shall again drop back to the $1 assessment, and be payable as above stated.

"The loss of the use of both hands, or both feet, or one hand and one foot at the same time, or the irrecoverable loss of the sight of both eyes at the same time, caused by disease, sickness, or accident, shall be considered as total permanent disability under the terms of this certificate.

"Permanent partial disability benefit:

"Second. In event the insured shall at any time subsequent to the date of this certificate while in good standing in this association become permanently partially disabled, this association shall pay to the insured the sum of one-half of one full assessment of $1 levied on each member in good standing at the time such disability occurs, and which is paid into the association as a result of that particular assessment levy, to the amount of one-half of policy in force at that date.

"The loss of the use of one hand, or one foot, or the irrecoverable loss of the sight of one eye, caused by disease, sickness, or accident, shall be considered as permanent partial disability under the terms of this certificate."

It was admitted that appellee at the time of the injuries hereinafter specified was a member of the association in good standing, and that, if injured as he alleged, the membership of the association was such as to entitle him to the sum of $1,000. On the issue of appellee's disability, the following testimony was presented:

"The plaintiff testified that he was 38 years of age, engaged in farming at Elbert, Tex., in Throckmorton county, from 1906 to 1912. 'Since that time I have been driving a truck at Elbert, Tex.' And in connection with his testimony he there introduced the benefit certificate containing the clause of the above copy. He then described on page 7 the manner in which the accident occurred and in regard to his ability to work he gave, in substance, as follows:

" 'At this time my hand is stiff, and it is weak; has not got the proper feeling; doesn't feel like my other hand at all, and painful at times in cold weather; gets cold and gets stiff and swells up at times, then going away. I can't use it to do any good. I can pick up light things with it and use it some, but heavy work I can't do at all, and have to use the back of my hand; had to do heavy work; to pick up any weight I can't do it at all; and is not as large as the other hand. I can grip a large object with it better than a small one, but not much grip to it, I can't hold it. I cannot perform my duties with that hand as well now as I could before it was

injured. This accident occurred in April, 1926. I am not in the truck business. I haul cotton seed, wheat, barley, anything that comes to hand; load the cotton seed with a fork, but I don't grip it with my hand, put the handle on the back. I load and unload them that way out of a seed house or cotton gin and into a car with that seed fork. I do not use a helper. I believe there are ten prongs on that seed fork. I haul groceries and things like that, sacks of potatoes, barrels of salt and flour, boxes of can goods. I am able to load and unload things, but I do not use both hands. I use one hand and one arm, the butt of my hand; sometimes use my arm. I have done some blacksmith work since this injury, and assisted in sharpening drill bits. About 50 or 75 pound bits were the biggest bits we sharpened with two men; when we had the big ones used three men. They call these bits fishtail bits. In sharpening these bits they use a power hammer, operated by a gas engine. You heat this bit and put it on the anvil with tongs or a hook. I used a hook like a cotton hook. I pitched some wheat in the field during the summer of 1926. I think it began about June 15th. I was hurt in April. I have been engaged in my trucking and manual labor since that time. I began work in the blacksmith shop about the 1st of October, 1926.'

"Testimony of Dr. M. Thompson was to the effect that he took an X-Ray picture of the hand, but there was no bones broken, but an injury to the tendons. Dr. Thompson examined him three times; the last time was in August, 1926. Dr. Thompson further stated: 'It is my opinion that he will be totally disabled for a period of six months to a year, and there will be a permanent partial disability as long as he lives.'

"The other medical testimony, there being several expert witnesses, was substantially to the same effect.

"C. N. Johnson, a witness for the defendant, testified that he is a farmer living in Elbert and had known J. O. Lilly, the plaintiff, for about 20 years, that J. O. Lilly had been engaged in the trucking business for the last 6 or 7 years. In September, when seed hauling opened up, he went to hauling seed, and it was necessary to use both hands in loading and unloading the same. 'I saw him driving a truck quite a number of times during the fall of 1926, and have seen him load the same with cotton seed and unloading them; he was using a seed fork with both hands. I have seen him do this several times, I was at the gin to have my cotton ginned. He was loading the cotton seed into a truck and hauling it to the railroad. In the blacksmith shop he was handling fishtail bits with a pair of tongs. He would hold them under the power hammer while the blacksmith hammered them out. He would remove them from the furnace with a pair of tongs and hold them under the power hammer while the blacksmith hammered them out. I have lifted these fishtail bits; they weigh about 75 to 100 pounds. They are held in place under the power hammer by a pair of tongs about 3½ feet long. Mr. Lilly would remove these bits from the furnace with the tongs and hold them under the power hammer while the blacksmith hammered them out. I have observed J. O. Lilly engaged in manual labor requiring the use of both hands several times since April 6, 1926, truck driving, loading and unloading merchandise and cotton

seed, etc., which requires the use of both hands.'

"Z. T. Thomas testified that he had lived in the Elbert community; that he witnessed the plaintiff aiding in the sharpening of the drill bits and saw him pitching wheat onto a wagon during the summer of 1926. 'His hand may be out of shape a little, but he works with it all the time. He carried his hand in a sling for a time after the accident, but worked as other men during the summer of 1926.'

"J. C. Howell, a witness for the defendant, testified that he was in Elbert in September, 1926, and saw Mr. Lilly, the defendant, handling and sharpening drill bits. He said the bits were handled with tongs, as he could see, and Mr. Lilly held the bit in the tongs in the furnace and then took it out with the tongs and held it under a hammer on the anvil, which would beat it down: 'I judge the bit they were working with weighed 70 or 100 pounds.'

"J. A. Soap, a witness for the defendant, testified that during the fall of 1926 he saw the defendant, J. O. Lilly, doing manual labor in which he used both hands; he saw him pitching cotton seed with a cotton seed fork and using the tongs in the blacksmith shop. In describing these tongs, he said: 'I judge they were 3 feet long or something like that. The tongs are two pieces of iron bent around and fastened like scissors. He took the tongs and held them just like a man holding a stick. I saw him take the bit from the furnace to the hammer with a pair of tongs.'

"Mr. G. H. Jones, secretary manager of the defendant, testified that he investigated the claim of the plaintiff and that he saw the plaintiff in August and in September. 'At the time I saw him he was at work in the blacksmith shop; he was handling these drill bits.' "

It was agreed by the plaintiff and the defendant that, if the plaintiff was entitled to recover for his alleged injury against the defendant, the amount that he would be entitled to under the certificate would be in the sum of $1,000.

The court submitted the case upon the following special issues and explanatory charges, to wit:

"Issue No. 1: Has the plaintiff sustained the permanent loss of the use of his left hand by reason of the injury complained of in his petition? Answer 'Yes' or 'No.'

"In connection with the above issue I instruct you that by the term 'loss of use' is meant that the hand is so affected permanently as to substantially and materially impair the use thereof in the practical performance of its functions in the pursuit of a laboring man. If the plaintiff's said hand is so affected, then there is a loss of its use, and, if you so find and believe from a preponderance of the evidence, you will answer the above issue in the affirmative; but, if you do not so find and believe from a preponderance of the evidence, you will answer said issue in the negative.

"Issue No. 2: Has the plaintiff become permanently partially disabled by reason of an injury to his left hand as complained of by him in his petition? Answer 'Yes' or 'No.'

"In this connection I instruct you that, if you believe from a preponderance of the evidence that the plaintiff, as a direct result

of the injury complained of by him, has sustained a partial physical inability to perform such labor as he was engaged in at the time of his injury or any similar or other work open and available to him and that he will not recover from such physical incapacity or inability, you will answer issue No. 2 in the affirmative. But, unless you do so find and believe from a preponderance of the testimony, you will answer said issue in the negative.

"You are the exclusive judges of the facts proved, the credibility of the witnesses, and of the weight to be given to the evidence, but as to the law of this case you must be governed by the instructions given you in this charge."

The jury answered both issues in the affirmative, and judgment was rendered in plaintiff's favor, as stated, from which judgment the defendant has duly appealed.

[1, 2] In the way of requested instructions and exceptions to the court's charge, it was insisted below and urged here that the evidence was such as to require the requested peremptory instruction in appellant's favor, and wholly insufficient to sustain the verdict of the jury on the issues submitted. But we think the evidence detailed shows a conflict which was for the jury's determination, and, viewed in the light most favorable to appellee, fully sustains the verdict and judgment.

[3, 4] A more serious question is raised by defendant's exception to the court's charge and undertaking to define what is meant by the use of the term "loss of use." The objections were that:

"A. It is improper, where a case is submitted to the jury upon special issues, for the court to so charge the jury by additional charges as the court has done in this case.

"B. The term 'loss of use' is one of such common use, and the term is one of such universal application that it does not require a definition from the court.

"C. The term 'loss of use' is a question of fact, and is not one of mixed law and fact, and the court, in undertaking to define such terms, is invading the province of the jury.

"D. A policy of accident insurance, designating certain injuries as amounting to total disability, as is defined in the certificate sued upon in its definition of permanent partial disability is binding upon the insured in its application to that particular specified injury so designated in the policy.

"E. The said special issue, charge or definition following special issue No. 1 undertakes to limit a permanent partial disability as defined in the policy and restrict the words of said policy, and is upon the weight of the evidence."

Substantially the same objections were made to the explanation given by the court in connection with special issue No. 2. In the case of Texas Employers' Ass'n v. Olesky, 288 S. W. 245, by the Beaumont Court of Civil Appeals, Olesky sued the association upon a policy of insurance contracting to indemnify him for alleged injuries to his foot, bones, ligaments, muscles, etc., and the court submit-

ted among other issues the following, together with its accompanying explanatory charge:

"Special issue. No. 1. Has the plaintiff sustained the permanent loss of the use of his foot by reason of the injuries complained of in his petition? Answer 'Yes' or 'No' as you may find the facts to be.

"In connection with special issue No. 1 you are instructed that by 'loss of use' is meant whether the foot is so affected, permanently, as to substantially and materially impair the use thereof in the practical performance of its functions in the pursuits of a laboring man. If the foot is not so affected, then there is no such loss of use."

The explanatory charge in this case, objected to and under consideration, seems to have been substantially copied from this decision. The Beaumont court overruled the objections to the court's charge and affirmed the judgment which had been rendered below in Olesky's favor. An application for a writ of error in the case was dismissed by the Supreme Court; thus at least indicating that the Supreme Court found no fault with the charge. Article 2189, Rev. Stats. of 1925, provides, among other things, that in submitting special issues the court "shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues." In view of the clauses in the certificate of insurance defining "total permanent disability" and "permanent partial disability" and of the contention in behalf of appellant that such definitions are controlling, we do not think, as will hereinafter more fully appear, that the explanatory charges are in violation of the statute, or violative of the rule that it is improper to give a general charge in a case submitted on special issues. We hence do not feel prepared to say that the explanatory charge under consideration is on the weight of the testimony, or of a character to require a reversal of the judgment below. The certificate undertakes to indemnify the appellee for either total permanent disability or permanent partial disability. This was the major purpose and intent of the instrument

[5, 6] It is a familiar rule of construction of insurance contracts, which are prepared entirely by one of the parties, the insurer, skilled in the use of words and required to clearly, definitely, and explicitly state any special and particular limitations it intends to place upon its liability which are not revealed in language when interpreted according to its general and ordinarily accepted meaning, that, unless such limitations are clearly stated, a provision reasonably susceptible of two meanings, one of a broader and the other of a narrower scope, will be given that interpretation which is most favorable to the insured. See Schmohl v. Travelers' Ins. Co. (Mo. App.) 189 S. W. 597; Lemaitre v. Nat.

Casualty Co., 195 Mo. App. 599, 186 S. W. 964; Tex. Employers' Ins. Ass'n v. Olesky (Tex. Civ. App.) 288 S. W. 244; Great Southern Life Ins. Co. v. Johnson (Tex. Civ. App.) 294 S W. 675; Roth v. Protective Association of America, 102 Tex. 241, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97. In the latter case it was said that the language used in the constitution of a benefit association with regard to the conditions of its liability, if susceptible of two constructions, should be given the interpretation most favorable to the beneficiary, and other provisions of the instrument may be considered in determining the sense in which it is used. The definition given in the certificate. under consideration of a "total permanent disability" and of a "permanent partial disability" does not we think necessarily exclude a permanent partial disability such as is defined in the court's explanatory charge. In its contractual terms the policy insured the appellee against either a total permanent disability or against a permanent partial disability, which it is easy to infer was the major purpose of appellee in taking out the certificate. If the appellant had desired that the definitions of permanent total and permanent partial disability, as given in the certificate, should be strictly confined to the terms given in the definitions, it should have been so stated.

On the whole, we think that, within the meaning of the policy, the court's explanatory charge cannot be said to be prejudicially erroneous, and the evidence, as already stated, being such as to support the verdict of the jury in appellee's favor, we think the judgment must be affirmed.