## TEXAS EMPLOYERS' INS. ASS'N v. ARNOLD.*

### No. 12847.

Court of Civil Appeals of Texas. Fort Worth.

May 20, 1933.

Rehearing Denied June 17, 1933.

Todd & Crowley, of Fort Worth, and Lawther, Cox & Cramer and William M. Cramer, all of Dallas, for appellant.

W. L. Coley, of Fort Worth, for appellee.

DUNKLIN, Justice.

The Texas Employers' Insurance Association has prosecuted this appeal from a judgment rendered against it in favor of Francis A. Arnold for benefits claimed as the result of the death of his father, J. P. Arnold, who died while he was an employee of the North Texas Iron & Steel Company in the city of Fort Worth, Tex., which company carried insurance with the defendant covering injuries to its employees.

The first question to be determined on this appeal is whether or not plaintiff was a dependent of his father at the time of the latter's death, and therefore a beneficiary under the policy within the meaning of the Workmen's Compensation Law. Section 8a of part 1 of that law (Rev. St. 1925, art. 8306, § 8a) reads in part as follows: "The compensation provided for in the foregoing section of this law shall be for the sole and exclusive benefit of the surviving husband who has not for good cause and for a period of three years

prior thereto, abandoned his wife at the time of the injury, and of the wife who has not at the time of the injury without good cause and for a period of three years prior thereto, abandoned her husband, and of the minor children, parents and stepmother, without regard to the question of dependency, dependent grandparents, dependent children and dependent brothers and sisters of the deceased employee."

The record shows that J. P. Arnold died on October 9, 1928, and at that time plaintiff was about 42 years of age. J. P. Arnold was a widower at the time of his death, and left no minor children, nor either of his parents surviving him, nor did he leave a stepmother. He left five brothers and two sisters, all of whom resided in the state of Pennsylvania and were over 40 years of age, and none of whom were in any manner dependent upon him for support.

Plaintiff was a resident of the state of Pennsylvania; his wife died in February, 1921, leaving him with two small daughters, ages 10 and 8 years. According to his testimony, at the time of his wife's death he had no money and no employment, and had to keep house and look after the children; several months after his wife died his father, then living in Fort Worth, sent him $700 to go in the general contracting business with his brother-in-law, but a few months thereafter the business failed on account of a fire which destroyed his equipment, and his brother-in-law and sister were burned to death. He then had on his hands the three minor children of his sister. On November 12, 1921, after the loss of his business, he sustained an injury to his knee while working with some heavy machinery. He testified that: "From that time until my father's death, until now, I have suffered severely from said injury and very much of the time have not been able to work and have been confined in either hospitals or at my home. I received, by reason of that injury under the Workmen's Compensation Law, $40.00 or $48.00 per month for a period of five months as near as I can recall. I am not so sure about the amount but I know the length of time. After the accident I was removed to my home in Milton and was treated for several weeks by Dr. George Davis."

According to his further testimony, he was treated in different hospitals, losing much weight, and later had an operation which resulted in the removal of the cap of his knee. On account of his injury, he was unable to earn a livelihood by any kind of work for a period of about 5 years, and during that time he was unable to support himself and minor children without assistance. He further testified that his father came from Fort Worth and visited him in Pennsylvania at the time of his injury, and agreed to furnish him as much as he could possibly spare to take care of him, his children, and his sister's children.

His father then returned to Fort Worth. According to his further testimony, for a few years after 1925 he worked at several different jobs, earning approximately $150 a month a portion of the time, and a part of the time engaged in the restaurant business. He further testified:

"Q. Did your father do anything looking to your support during the period of time between 1921 and 1928? A. He helped me all that time between 1921 and 1928, sending me checks anywhere from $5.00 to $100.00 at a time. He also sent money direct to the Evangelical Orphanage for my daughters.

"Q. Will you state as nearly as you can what portion of the time between 1921 and 1928 you were disabled by reason of your injury, and ill health, as above stated? A. I was practically entirely disabled from the time of my accident until the latter part of 1926, when I went to work for the U. G. I. Company. Since that time I have been in hospitals at different times during the year, possibly at least on the average of two months a year.

"Q. State if you can, approximately the total amount contributed to you by your father, J. P. Arnold, between 1921 and 1928? A. The total amount contributed to me by my father, J. P. Arnold, between 1921 and 1928, as near as I can state, was possibly $4,000.00 or more. After I got out of the hospital, and when I was still on crutches, my father sent me money to come to Texas on in order to regain my health and strength. During the time I was in Texas, he paid all my expenses back home. All of this was in addition to the $4,000.00.

"Q. Did you depend upon your father for these contributions over the period of time mentioned? A. I did depend on my father for these contributions.

"Q. Could you have gotten along without these contributions? A. I could not have gotten along without these contributions."

Mrs. G. D. Moss, who resided in Fort Worth, where she has kept a boarding house since the year 1922, was introduced as a witness for the plaintiff. She testified that J. P. Arnold boarded with her. She further testified:

"Q. Did Mr. Arnold ever talk with you about Francis? A. Frequently, yes, sir.

"Q. Tell in your own way what he said about Francis, if he did say anything about helping him? A. Yes, he did. He always said that the boy was crippled and it made it hard for him to get work, you know, and he had to help him and—I believe it was two girls, he helped them every month, besides sending them clothes and different things and providing for them so they could get along.

"Q. Did he tell you about some accident happening back there to the boy? A. Yes.

"Q. Do you remember what that was? A. Judge Coley, I am not sure. I think he fell and got his leg crushed or bruised, or something, and crippled him.

"Q. How long did he continue to contribute, or did he tell you how long he continued to contribute? A. Well, until he died. He had before, years before, since the mother died and perhaps before, he took care of the children and helped with them, and the boy."

Mr. W. L. Coley testified for the plaintiff that he became acquainted with J. P. Arnold in the year 1920, and frequently talked with him, and that his acquaintance was quite close by reason of the fact that they were both members of the same church and that practically every Sunday from the year 1921 until the time of Arnold's death the latter would talk to him about the plaintiff and his troubles, saying that plaintiff was unable to support himself and his children. He further testified: "He told me that the boy had been badly injured and was unable to support himself and his children and he told me about the death of the wife and the death of the sister, Mrs. Campbell, and said it placed a heavy burden upon his son and that he had been contributing to the support of the boy and his family all of the years. I think the last time I talked to him, perhaps, was the Sunday before he was killed on October 8th; I talked with him about it at that time, he saying that he had contributed as much as he felt able to contribute all of the time to the support of the boy; that the boy couldn't get along without his help."

Special issue No. 1 submitted to the jury and the answer thereto were as follows: "From a preponderance of the evidence do you find that at the time of the death of J. P. Arnold, on October 9, 1928, the plaintiff, Francis A. Arnold was dependent upon said J. P. Arnold, as a dependent is above defined? Answer: Yes."

That was the only issue submitted to the jury, and in connection with it the court gave this definition:

"You are instructed that to constitute one a dependent of another, the contributions, if any, made, must be substantial, as distinguished from trivial. One may be dependent upon another, altho the beneficiary is not destitute or wholly dependent, but if contributions of one to another are made reasonably substantial, having in mind the condition of the parties and their circumstances, and are received and relied upon by the beneficiary and are not merely occasional gifts, then, such condition would constitute the beneficiary a dependent.

"It is not sufficient that contributions or gifts have been made by the deceased to the beneficiary, but such contributions or gifts must have been regular and substantial in their character, and the beneficiary, at the time of the death of the deceased, was relying in whole or in part upon such contributions or gifts for his support, and that such contributions, or gifts, if any, were reasonably necessary for the support of the plaintiff."

Numerous objections were made to the definition of the term "dependent" on several grounds, to wit, that it fails to take into consideration the element of ability of plaintiff to earn a living for himself, nor the absence of any legal obligation of the father to support plaintiff, his adult son; nor the necessity of assistance from his father as a supplement to the ability of plaintiff to support himself with financial resources at his command, and by the exercise of ordinary diligence; nor the further element of plaintiff's actual need of such assistance and his reliance thereon, and for the further reason that the definition so given is but a statement of substantive law and not proper in submitting the case on special issues.

The following statement in 28 R. C. L. p. 770, is sustained by many authorities:

"In construing the statute, as applied to particular cases, the word 'dependent' should not be given its narrowest nor its most literal meaning, when considered in connection with the act in question, its aims and objects. As a very general proposition, it may be said that a dependent is one who looked to or relied on the decedent for support and maintenance. Reliance must have been placed upon the deceased employee to provide the applicant for compensation, in some measure or to some extent, with his or her future living expenses. And where this is the case, it is not material that the contributions were made at irregular intervals, or in differing amounts, nor that the money was paid in accordance with the provisions of a contract. The purpose of the statute is to provide the workman's dependent in future with something in substitution for what has been lost by the workman's death, and, consequently, to establish dependency the applicant for compensation must show that he or she had reasonable grounds to anticipate future support from the decedent. This reasonable expectation of continuing or future support and maintenance seems to be the true criterion as to who are dependents.

"A person may be a dependent of an employee within the purview of the statute although the dependence is only partial, and to be an 'actual dependent' it is not necessary that the applicant should have been entirely dependent on the deceased.".

See, also, the same work, beginning on page 769 to page 777; Lumbermen's Reciprocal Association v. Warner (Tex. Com. App.) 245 S. W. 664; Southern Surety Co. v. Hibbs (Tex. Civ. App.) 221 S. W. 303; Consolidated Underwriters Ass'n v. Free (Tex. Civ. App.)

253 S. W. 941; Texas Employers' Ins. Co. v. Olesky (Tex. Civ. App.) 288 S. W. 244; E. K. Local Insurance Co. v. Lilly (Tex. Civ. App.) 1 S.W.(2d) 490; Arendale v. Arendale (Tex. Civ. App.) 22 S.W.(2d) 1080; Texas Employers' Ins. Ass'n v. White (Tex. Civ. App.) 32 S.W.(2d) 955; Rodriguez v. Texas Employers' Ins. Co. (Tex. Civ. App.) 35 S.W.(2d) 510.

█ It has been frequently held that it is error for the trial court to refuse to give proper definitions of legal terms. See Washington Fidelity Nat'l Ins. Co. v. Williams (Tex. Com. App.) 49 S.W.(2d) 1093; Texas Jurisprudence, vol. 3, p. 211. And it is our conclusion that the definition given by the trial court was in accord with the authorities cited above, and was therefore sufficient; especially so since none of the facts suggested in the objections made to it are embodied in the Workmen's Compensation Law as necessary to constitute one a dependent within the meaning of the provision quoted above. If plaintiff was a dependent within the meaning of that statute, he was entitled to its benefits irrespective of the causes that brought about that condition.

██ The following answer of plaintiff in his deposition was read in evidence over defendant's objection: "At the time of the death of J. P. Arnold I was dependent upon J. P. Arnold for support."

The objection to that answer was that it called for a conclusion, but its admission does not constitute reversible error, since plaintiff at great length in his answers to both direct and cross interrogatories testified fully to the facts showing his dependency. Plaintiff's further testimony as to his financial condition was likewise admissible, since it had a direct bearing upon the issue of dependency.

The testimony of Mrs. Moss, quoted above, and also of W. L. Coley as to statements made by J. P. Arnold to each of those witnesses that on account of his needs therefor he was contributing to plaintiff's support were objected to on the ground that they were hearsay.

Several cases have been cited by appellee which were suits for losses which plaintiffs expected to receive from contributions of relatives who had died from the effects of injuries received, in which it was held that testimony was admissible as to statements of the deceased expressing his intention to render such contributions to the plaintiffs in the case, for the reason that it tended to show that such contributions would have been made had the deceased lived. I. & G. N. Ry. v. Knight (Tex. Civ. App.) 45 S. W. 167; H. & T. C. Ry. v. White, 23 Tex. Civ. App. 280, 56 S. W. 204; A., T. & S. F. Ry. v. Van Belle, 26 Tex. Civ. App. 511, 64 S. W. 397; Memphis Cotton Oil Co. v. Goode (Tex. Civ. App.) 171 S. W. 284.

Following are the two assignments of error to the admission of the testimony of Mrs. G. D. Moss and W. L. Coley:

"The trial court erred in permitting the witness, Mrs. G. D. Moss, to testify as to the substance of conversation with J. P. Arnold, during his life time, wherein it was testified J. P. Arnold stated to witness he was making contributions to his son Francis, over the objection that same was hearsay, immaterial and irrelevant to any issue and was prejudicial.

"The trial court erred in permitting the witness W. L. Coley to testify as to the substance of conversations with J. P. Arnold, during his life time, wherein it was testified J. P. Arnold stated to witness he was making contributions to his son Francis, over the objection that same was hearsay, immaterial and irrelevant to any issue and was prejudicial."

Propositions submitted under those assignments are to a like effect.

██ Under the authorities cited above, statements by J. P. Arnold that he was making contributions to his son, in connection with other statements at the same time that the son was in need thereof, was admissible as showing his state of mind and corroborative of plaintiff's testimony that contributions were being made during all of that time. Furthermore, following the propositions under those assignments, and as a basis therefor, the testimony of those two witnesses, quoted above, together with several other questions and answers, are set out, and some of those answers showed statements by J. P. Arnold evidencing knowledge on his part of plaintiff's injury and other misfortunes, necessitating assistance, and the desire of the father to render it, which clearly would not be objectionable. And neither in the assignments nor in the propositions submitted thereunder has any attempt been made to segregate some of the imputed statements from the others; the assignments being presented to all of them as a whole. Accordingly, those assignments are overruled.

█ Nor did the court err in refusing to submit several special issues requested by the defendant, such as: What would have been the monthly contributions by the deceased to his son if he had not met his death? Over what period of time such contributions would have continued after the date of his father's death? Was plaintiff substantially dependent upon J. P. Arnold for his living? The issue last noted was covered by the one that was submitted; the others were immaterial.

█ Nor can we say that testimony introduced to show contributions made by J. P. Ar-

nold as far back as 1921, when plaintiff was injured, was objectionable as being too remote. Oilmen's Reciprocal Ass'n v. Gilchreas (Tex. Civ. App.) 283 S. W. 633; Texas Employers' Ins. Co. v. McDonnell (Tex. Civ. App.) 278 S. W. 294; Consolidated Underwriters v. Free (Tex. Civ. App.) 253 S. W. 941.

 We overrule further assignments of error to the refusal of the court to instruct a verdict in favor of the defendant; nor can we say that the verdict was so contrary to the great weight of evidence as to require a reversal.

Accordingly, all assignments of error are overruled, and the judgment of the trial court is affirmed.